2006 UT App 214

**John E. RILEY, Petitioner
and Appellant,**

v.

**Donna L. RILEY, Respondent
and Appellee.**

No. 20050386–CA.

Court of Appeals of Utah.

May 25, 2006.

Randall W. Richards, Richards Caine & Allen, Ogden, for Appellant.

David J. Peters and D. Michael Nielsen, Bountiful, for Appellee.

Before BENCH, P.J., BILLINGS and ORME, JJ.

## OPINION

BILLINGS, Judge:

¶1 Petitioner John E. Riley (Husband) appeals the trial court's divorce decree. Husband claims the trial court abused its discretion in (1) awarding Respondent Donna L. Riley (Wife) $900 per month in alimony, (2) awarding Wife attorney fees, and (3) failing to award Husband one half of Wife's retirement benefits. We affirm in part and reverse in part.

## BACKGROUND

¶2 Husband and Wife were married in February 1992 in Fairbanks, Alaska. Prior to their marriage, Husband, who had served in the Army for more than fifteen years, was stationed at Fort Wainwright in Fairbanks, Alaska. Wife, who lived approximately 680 miles south of Fairbanks in Sitka, Alaska, was working full time for the State of Alaska. After the couple married, Wife was unable to find employment in Fairbanks, so Husband left the Army and relocated to Sitka.[1] When Husband left the Army, he received $15,000 in severance pay. Had Husband stayed with the Army for another four years and four months, he would have received approximate-

ly $1000 per month in retirement benefits for the rest of his life. After Husband relocated to Sitka, he had difficulty finding work, so the parties agreed that he would stay home to care for his son and Wife's two children while Wife continued to work.

¶3 In July 1994, the family moved to Kaysville, Utah, where Wife continued her work in the child and family services field and obtained a master's degree. Wife then secured a job as the Associate Regional Director for the Division of Child and Family Services. At the time of trial, Wife was working as a program manager with the Department of Human Services.

¶4 After Husband and Wife moved to Utah, Husband pursued a career as a commercial pilot. He attended school from September 1994 to August 1997 and received a bachelor's degree in aviation management from Westminster College. The Veteran's Administration (VA) paid for Husband's schooling plus $796 per month in living expenses. After graduating, Husband initially worked full time as a flight instructor. He later obtained a job as a pilot for Continental Express Jet Airlines (Express). At the time of trial, Husband was a captain with Express.

¶5 In 1999, Husband had an extramarital affair, resulting in the birth of a son in Houston, Texas, on February 4, 2000. Due to Husband's pattern of sustained deception, Wife was unaware of the affair or the child until she opened a letter addressed to Husband from the State of Texas in April 2001. After Wife learned of the affair and the child, Husband and Wife sought counseling to deal with the resulting marital problems. Husband and Wife agreed that as a condition of the parties remaining together, Husband would not have contact with his newly born son or the son's mother.

¶6 In spring 2003, Husband asked Wife what they would do if the son lost his mother. Wife informed Husband that he would

---

1. While the parties presented conflicting evidence as to the reason Husband left the Army, the trial court found "that regardless of the purpose and reason for the cessation of employment, [Husband] has greatly benefitted in his personal happiness and his career opportunities by leav-

ing the military and becoming a commercial pilot" as "[Husband] was unhappy in the military and ... the family made a plan for him to leave the military, receive further education and training[,] and pursue a career of his choosing."

have to give up his parental rights to the child. In response, Husband decided to leave the marriage. Husband moved to Houston, Texas, agreeing to pay Wife $900 each month until they sold their house in Utah. The couple sold their house on December 1, 2004.

¶ 7 Over the course of the marriage, Husband's earnings rose significantly. When the parties first married, Husband was earning $17,000 annually from the Army. At the time of trial, Husband was compensated at a rate of $66.40 per hour. Husband also receives $414 per month in VA disability payments. In 2004, Husband's W–2 showed an annual income of $82,193.19, which included $16,767.20 in retroactive pay. Husband testified at trial that his expected gross taxable income for 2005 was $6232 per month. This estimate of gross monthly income did not include the approximate $4000 Husband receives annually as an untaxed per diem to cover expenses associated with travel for work. The trial court, taking into account Husband's airline wages, per diem, and disability pay, found that Husband earns $6800 per month. Husband has no pension plan, but Express does provide its pilots with a retirement program, matching dollar for dollar up to 6% of Husband's investments in a 401(k) plan. At the time of trial, Husband had $21,858.75 in his 401(k) plan, with a loan for $5,711.84 against that amount.

¶ 8 The trial court found that Husband set forth his monthly expenses at $4655, $750 of which was for food and entertainment. The trial court determined that, despite the fact that some of Husband's expenses were inflated, he still had more than $2000 left over each month based on earnings of $6800. Therefore, the trial court concluded that Husband had the ability to provide support to Wife.

¶ 9 Throughout the marriage, Wife's earning potential remained relatively stable. At the time the parties married, Wife was earning approximately $50,000 a year working for the State of Alaska. Her 2004 W–2 showed a gross income of $46,919.64. Wife reported her 2005 expected gross income as approximately $50,000. Although Wife occasionally performed outside contract services, the court found that her income from these services was minimal. The trial court found Wife's monthly earnings to be $4153. At the time of trial, Wife had $23,000 in a 401(k) account. There was a loan against this account in the amount $11,500.

¶ 10 Wife set forth expenses totaling $4491, including $400 per month in legal fees. The court found that Wife's monthly expenses were $4491, $338 more than her income of $4153 per month. Therefore, the court found Wife was in need of support.

¶ 11 The trial court also found that Husband and Wife contributed significantly different amounts toward family expenses over the course of the marriage. Husband earned approximately $205,688, plus $22,500 in VA benefits, while Wife earned approximately $502,645. In addition to her earnings, Wife liquidated several of her premarital assets to contribute to family expenses. The trial court found that Wife earned and contributed approximately $275,000 to $300,000 more than Husband over the course of the marriage.

¶ 12 Finally, the trial court determined that Wife was more credible than Husband. Specifically, the trial court found that while Wife had been frank with the court, Husband had been unwilling to admit facts that he should have admitted. For example, during trial, Husband denied having fathered an additional child around the time of his separation from Wife. Husband did acknowledge, however, that he was involved with the child's mother and that this child was covered by his medical insurance. The trial court therefore concluded that Husband had either lied about fathering a second child out of wedlock or he had defrauded the insurance company, either of which reflected poorly on his credibility.

¶ 13 In its decision, the trial court acknowledged it had given consideration to the issue of fault. Specifically, the court noted that: (1) during the course of the marriage, Husband committed adultery and fathered an out-of-wedlock child; (2) Husband hid this from Wife for nearly two years, during which time he paid child support; (3) Wife found out about Husband's affair and his new son

when she opened a letter from the State of Texas that was addressed to Husband; (4) these circumstances constituted grounds for extreme mental anguish and distress for Wife; and (5) Husband may have fathered an additional child outside his marriage to Wife, and he was evasive and deceitful about the existence of such a child. The trial court concluded that the divorce would not have taken place but for Husband's acts of adultery.

¶ 14 Based on the above findings, the trial court ordered Husband to pay Wife alimony in the amount of $900 per month, not to exceed the duration of the marriage—approximately 156 months. The trial court awarded each party his or her own 401(k) retirement benefits and allowed Wife to keep all of her defined benefits from state retirement. Finally, the court ordered Husband to pay $5000 of Wife's $10,500 in attorney fees over an eighteen-month period.

## ISSUES AND STANDARDS OF REVIEW

■ ¶ 15 On appeal, Husband asserts the trial court improperly awarded Wife $900 per month in alimony and $5000 in attorney fees. " 'Trial courts have considerable discretion in determining alimony ... and [determinations of alimony] will be upheld on appeal unless a clear and prejudicial abuse of discretion is demonstrated.' " *Davis v. Davis,* 2003 UT App 282,¶ 7, 76 P.3d 716 (alterations in original) (quoting *Breinholt v. Breinholt,* 905 P.2d 877, 879 (Utah Ct.App.1995)). Likewise, "[t]he decision to award attorney fees and the amount thereof rests primarily in the sound discretion of the trial court." *Childs v. Childs,* 967 P.2d 942, 947 (Utah Ct.App.1998). A trial court abuses its discretion "if there is no reasonable basis for the decision." *Langeland v. Monarch Motors, Inc.,* 952 P.2d 1058, 1061 (Utah 1998).

■ ¶ 16 Husband also disputes the trial court's decision not to award Husband one-half of Wife's retirement benefits.

We afford the trial court considerable latitude in adjusting financial and property interests, and its actions are entitled to a presumption of validity. Accordingly, changes will be made in a trial court's property division determination in a divorce action only if there was a misunderstanding or misapplication of the law resulting in substantial and prejudicial error, the evidence clearly preponderated against the findings, or such a serious inequity has resulted as to manifest a clear abuse of discretion.

*Davis,* 2003 UT App 282 at ¶ 8, 76 P.3d 716 (quotations and citations omitted).

## ANALYSIS

### I. Alimony Award

■ ¶ 17 Under Utah Code section 30–3–5, the trial court must consider, at a minimum, the following factors in determining alimony:

(i) the financial condition and needs of the recipient spouse; (ii) the recipient's earning capacity or ability to produce income; (iii) the ability of the payor spouse to provide support; (iv) the length of the marriage; (v) whether the recipient spouse has custody of minor children requiring support; (vi) whether the recipient spouse worked in a business owned or operated by the payor spouse; and (vii) whether the recipient spouse directly contributed to any increase in the payor spouse's skill by paying for education received by the payor spouse or allowing the payor spouse to attend school during the marriage.

Utah Code Ann. § 30–3–5(8)(a) (Supp.2005).

¶ 18 Additionally, in determining an alimony award, "the court may consider the fault of the parties." *Id.* § 30–3–5(8)(b).[2] Further,

[w]hen a marriage of long duration dissolves on the threshold of a major change in the income of one of the spouses due to the collective efforts of both, that change shall be considered in ... determining the amount of alimony. If one spouse's earning capacity has been greatly enhanced through the efforts of both spouses during the marriage, the court may make a com-

---

**2.** In May 1995, the Utah Legislature amended Utah Code section 30–3–5 to include now numbered subsection (8)(b), allowing trial courts to consider fault in determining alimony awards. *See* Utah Code Ann. § 30–3–5 (Supp.1995).

pensating adjustment in ... awarding alimony.

*Id.* § 30–3–5(8)(e).

¶ 19 Here, considering all of the foregoing factors, the trial court awarded Wife $900 per month in alimony, well above the shortfall between her demonstrated monthly expenses and her monthly income. In determining the amount of alimony, the trial court explicitly stated it had considered Husband's fault. We conclude the trial court did not abuse its discretion in awarding Wife a $900 per month alimony award.

¶ 20 Husband first argues the trial court abused its discretion in awarding Wife $900 per month in alimony because the trial court erred in determining Wife's monthly income and expenses. To begin, Husband claims the trial court erred in excluding Wife's earnings from occasional contract work in its calculation of her income. In declining to consider Wife's "occasional" outside sources of income, the trial court found that "[Wife's] income [from these sources was] minimal. Her tax records evidence[d] a loss [for contract work] every year except 2003, when she earned the sum of $878." We conclude the trial court's finding as to the financial significance of Wife's possible outside sources of income was "adequately supported by the record" and thus, not clearly erroneous. *State v. Pena,* 869 P.2d 932, 935–36 (Utah 1994).

¶ 21 Husband also contends the trial court erred in calculating Wife's monthly expenses. Husband maintains the trial court overestimated Wife's expenses for two reasons. First, Husband asserts the trial court should not have included Wife's $400 per month payment for attorney fees in her calculated expenses because Wife presented no evidence as to how much Wife had paid and how long this payment would last. Second, Husband challenges some of Wife's expenses as being inflated. However, Husband failed to object on either ground at trial. *See Paffel v. Paffel,* 732 P.2d 96, 103–04 (Utah 1986) (refusing to consider Husband's challenge to trial court's determination of wife's income or expenses because husband failed to object to introduction of evidence in support of trial court's determination at trial). Furthermore, in its findings, the trial court indicated that it found Wife to be "more credible" than Husband. In *Osguthorpe v. Osguthorpe,* 804 P.2d 530 (Utah Ct.App.1990), the Utah Court of Appeals stated that "[t]he trial court found that defendant was not being candid as to his actual current income ... [and w]e defer to the trial court's assessment of the credibility of the witness." *Id.* at 534 (citations omitted). The trial court is "considered to be in the best position to assess the credibility of witnesses." *Pena,* 869 P.2d at 936. Here, the record adequately supports the trial court's findings, and we do not dispute the trial court's apparent determination that Wife's estimates were not inflated. We conclude that the trial court's findings as to Wife's monthly expenses were not clearly erroneous.

¶ 22 Second, Husband argues the trial court abused its discretion in awarding Wife $900 per month in alimony because the trial court improperly included Husband's per diem and excluded his deductions in determining Husband's ability to pay alimony. The Utah Supreme Court, however, has previously included per diem and mileage as a part of the "money and property" considered in a divorce action. *Christensen v. Christensen,* 21 Utah 2d 263, 444 P.2d 511, 512 (1968). Further, regarding the exclusion of deductions, the trial court acknowledged that it relied on each party's gross income "without deduction for taxes." Because, as the trial court explained, it was "consistent in utilizing gross incomes for both parties," we conclude the court did not abuse its discretion.

¶ 23 Finally, Husband maintains the trial court abused its discretion in granting Wife an alimony award of $900 per month because, in doing so, the trial court was attempting to punish Husband for his misdeeds. Utah statutory law expressly provides that a trial court "may consider the fault of the parties in determining alimony." Utah Code Ann. § 30–3–5(8)(b). Certainly the facts of this case—Husband's engagement in extramarital affairs and his prolonged deceitful conduct that led to the divorce—present precisely the type of situation where the legislature intended the trial court to consider fault. Indeed, Husband's fault goes a long way in explaining the propriety of a $900 per month

alimony award, even though such an award would be too high if only economic factors were considered.

¶ 24 In the present case, the trial court carefully explained its reasons for granting the alimony award. Those reasons are consistent with the factors set out in Utah Code section 30–3–5(8). *See id.* § 30–3–5(8). Specifically:

> [The trial court] f[ound] that the facts of this case justif[ied] consideration of [Husband's] fault. [It] deem[ed] it necessary to consider that factor in fairness to [Wife]. It [was] not the [trial c]ourt's intent to apply strict punitive measures so as to unfairly or inequitably burden [Husband]. Nevertheless, [Wife] [was] entitled to certain relief based upon her needs, [Husband's] ability to pay, his fault, the efforts of [Wife] in furthering [Husband's] career, and the sacrifice/liquidation of [Wife's] premarital assets in order to further [Husband's] career opportunities.

Accordingly, we conclude the trial court did not abuse its discretion in granting Wife a $900 per month alimony award.

## II. Attorney Fees

¶ 25 Husband also argues the trial court abused its discretion in awarding Wife $5000 in attorney fees. Under Utah Code section 30–3–3, a trial court may award attorney fees in a domestic matter. *See* Utah Code Ann. § 30–3–3 (Supp.2005). In doing so, however, the trial court must base its award of attorney fees "on evidence of the receiving spouse's financial need, the payor spouse's ability to pay, and the reasonableness of the requested fees." *Childs v. Childs,* 967 P.2d 942, 947 (Utah Ct.App.1998). The decision to award attorney fees " 'must be based on sufficient findings' regarding these factors." *Shinkoskey v. Shinkoskey,* 2001 UT App 44,¶ 18, 19 P.3d 1005 (quoting *Rehn v. Rehn,* 1999 UT App 41,¶ 22, 974 P.2d 306).

¶ 26 Here, the trial court awarded Wife $5000 in attorney fees despite the fact that it had already taken Wife's legal fees into account when it formulated Wife's alimony award. That is, in calculating the alimony award, the trial court relied on Wife's stated monthly expenses, totaling $4491, which included her $400 per month legal fees. Consequently, where Wife's $900 per month alimony award already exceeded her monthly expenses by $562, there appears to be little evidence to support the trial court's determination that Wife's financial need necessitated Husband effectively compensating Wife twice for her legal expenses. We therefore conclude the trial court abused its discretion and reverse the trial court's award of attorney fees.

## III. Retirement Benefits

¶ 27 Finally, Husband argues the trial court abused its discretion when it did not award Husband one-half of Wife's state retirement benefits. This court has stated that the primary purpose of a property division, in conjunction with an alimony award, " 'is to achieve a fair, just, and equitable result between the parties.' " *Haumont v. Haumont,* 793 P.2d 421, 424 (Utah Ct.App. 1990) (quoting *Pusey v. Pusey,* 728 P.2d 117, 119 (Utah 1986)). Although "[r]etirement accounts are part of the marital estate and they are generally to be equitably divided[,] ... 'an unequal division of marital property ... is ... justified when the trial court memorializes in commendably detailed findings the exceptional circumstances supporting the distribution.' " *Davis v. Davis,* 2003 UT App 282,¶ 11, 76 P.3d 716 (second omission in original) (additional quotations and citations omitted) (quoting *Bradford v. Bradford,* 1999 UT App 373,¶ 27, 993 P.2d 887). Further, Utah code section 30–3–5(8)(e) provides:

> When a marriage of long duration dissolves on the threshold of a major change in the income of one of the spouses due to the collective efforts of both, that change shall be considered in dividing the marital property.... If one spouse's earning capacity has been greatly enhanced through the efforts of both spouses during the marriage, the court may make a compensating adjustment in dividing the marital property....

Utah Code Ann. § 30–3–5(8)(e); *see also Kerr v. Kerr,* 610 P.2d 1380, 1382–83 (Utah 1980) (determining that wife's willingness to work in order to increase the earning capaci-

ty of her husband spoke in favor of the trial court's distribution of marital property).

¶ 28 In *Davis,* the trial court allowed each party to "retain the retirement and pension accounts in his or her name." 2003 UT App 282 at ¶ 12, 76 P.3d 716. The court explained any perceived disparity by noting that the husband had the present and future ability to ensure adequate retirement funds, while the wife did not. *See id.* In addition, the court noted that the wife had contributed significant amounts to marital obligations that the husband had not. *See id.*

¶ 29 Like the court in *Davis,* in the present case, "[w]e conclude that the trial court made sufficient factual findings to support its conclusion that there were 'exceptional circumstances' warranting a seemingly unequal distribution of the parties' retirement accounts." *Id.* at ¶ 13. Here, the trial court found that Husband benefitted in his

> personal happiness and career opportunities throughout the course of the marriage. The family coordinated its activities to further this goal. The family relocated from Alaska to Utah in order for Husband to obtain an education in his chosen field. Wife liquidated her pre-marital assets, including investment funds which would have a current value of $124,012.91, to further Husband's career goals. Wife contributed approximately $275,000 to $300,000 more than Husband over the course of the marriage. As a result of becoming a commercial pilot, Husband had a very substantial increase in income. Wife's income has remained relatively unchanged.

¶ 30 Additionally, as in *Davis,* the trial court found that Husband had the ability to provide for retirement savings and Wife had contributed significantly more to marital obligations than Husband. *See* 2003 UT App 282 at ¶ 12, 76 P.3d 716. Accordingly, the trial court concluded that, based on an analysis of the facts specific to the case, it was appropriate to award Wife all of her defined benefit assets. This decision was not based on "a misunderstanding or misapplication of the law," the "evidence [did not] clearly preponderate[ ] against the findings," and no "serious inequity resulted as to manifest a clear abuse of discretion." *Id.* at ¶ 8. Therefore, we uphold the trial court's decision not to award Husband one-half of Wife's defined benefit assets.[3]

## CONCLUSION

¶ 31 Based on the unique circumstances of this case, the trial court did not abuse its discretion when it awarded Wife $900 per month in alimony and all her defined benefit assets. However, the trial court did abuse its discretion in awarding Wife attorney fees because the trial court had already considered and accounted for Wife's monthly legal fees in making its alimony award. We therefore affirm the trial court's alimony and benefits awards and reverse the trial court's award of attorney fees.

¶ 32 WE CONCUR: RUSSELL W. BENCH, Presiding Judge and GREGORY K. ORME, Judge.

---

**3.** We note an additional rationale for the trial court's decision on retirement benefits. Both Husband and Wife were well-paid professionals who had been gainfully employed throughout their marriage. Each had a retirement program through his or her employment. In such a case, leaving each spouse with his or her own retirement benefits is hardly inequitable.