2009 UT App 374

**Kathleen C. MARK, Petitioner and Appellee,**

v.

**Rickie D. MARK, Respondent and Appellant.**

No. 20080840–CA.

Court of Appeals of Utah.

Dec. 10, 2009.

Christina L. Micken, Layton, for Appellant.

Richard S. Nemelka, Salt Lake City, for Appellee.

Before GREENWOOD, P.J., ORME and DAVIS, JJ.

## OPINION

DAVIS, Judge:

¶ 1 Rickie D. Mark (Husband) appeals the trial court's award of rehabilitative alimony in his favor in the amount of $1200 per month for one year following the entry of the divorce decree. Husband also appeals the trial court's order directing him and Kathleen C. Mark (Wife) to each pay their own attorney fees. We affirm in part and reverse and remand in part.

## BACKGROUND

¶ 2 Husband and Wife married in July 1982 and divorced in September 2008, after more than two years of separation.[1] During the course of their twenty-six-year marriage, Wife obtained a master's degree and worked as a certified nurse midwife. Husband completed three and one-half years of course work at Weber State University in design graphics engineering technology and primarily worked in construction and sales.[2] Wife made a significantly higher salary than Husband during the marriage. Indeed, at the time of trial, Wife's gross income as a certified nurse midwife was $17,916 per month, while Husband's average monthly gross income from his position in inside sales with Stock Building Supply was $2025 per month.[3]

¶ 3 In anticipation of the trial in this matter, Wife hired an employability analyst who prepared a report regarding Husband's potential earning capacity (the employability report). Taking into consideration Husband's schooling and work history, the employability report concluded,

Although [Husband] has three and a half years in specialized training in design graphics[ ] engineering technology, there are limited employment opportunities in this area. Since he ... has not worked in this area and did not complete the program, [Husband] would have difficulty competing with other job applicants for these limited positions.[4]

The employability report also stated that one of Husband's employment options might be full-time work as an architectural, civil, or mechanical drafter, with a starting annual salary ranging from $24,980 to $31,070.[5]

¶ 4 At trial, Husband testified that his current monthly expenses, including rent and utilities, totaled roughly $740. Husband also testified, however, that his "anticipated expenses," including the purchase of a new house and a newer car, as well as a monthly vacation savings account, totaled approximately $4130. Wife, on the other hand, testified that her monthly expenses were approximately $11,000 per month.

¶ 5 In November 2007, the trial court issued a memorandum decision awarding Husband rehabilitative alimony for one year in the amount of $1200 per month and ordering that Husband and Wife each pay their own attorney fees.[6] In September 2008, the trial court entered findings of fact, conclusions of law, and a divorce decree consistent with the memorandum decision. The trial court found,

[Husband] deserves a good deal of blame associated with the dissolution of this marriage. Credible testimony establishes that he has a problem with alcohol that has led to several encounters with law enforcement.... [Wife] has obtained a protective order against [Husband].... Additionally,

1. Wife and Husband's children had all attained majority by the time of their separation, and there are no issues regarding custody or child support presented in this appeal.

2. At the time of the divorce, Husband was employed full-time by Stock Building Supply in inside sales; however, Husband worked only intermittently while the parties were married.

3. The disparity in the parties' income at the time of trial is also representative of the disparity that existed during the parties' marriage.

4. For reasons that are unclear, the employability report is not a part of the record on appeal. The quoted language is therefore taken from the portion of the trial transcript where Husband was asked to read directly from the report while on the stand.

5. Wife's counsel summarized this information from the employability report while questioning Wife about it on redirect.

6. Subsequent to the memorandum decision, the trial court held two additional hearings, one regarding property division and one regarding clarification of the alimony award.

[Wife] has been the family's primary financial support with [Husband] working only intermittently throughout the marriage.

As to the alimony award, the trial court found, "[Husband] has demonstrated some need for alimony but has also inflated that need as demonstrated in his proposed future expenses.... [Wife] has the ability to pay alimony." Finally, the trial court found, "Although fault is an appropriate consideration in awarding alimony in addition to the [mandatory statutory factors], the Court is mindful of the Utah policy that the purpose of alimony is to provide support, *not to reward or punish.*" (Emphasis added.) Husband now appeals.

## ISSUES AND STANDARDS OF REVIEW

¶ 6 Husband first claims that the trial court erred in awarding one year of rehabilitative alimony in the amount of $1200 per month. Alimony determinations "will be upheld on appeal unless a clear and prejudicial abuse of discretion is demonstrated." *Riley v. Riley,* 2006 UT App 214, ¶ 15, 138 P.3d 84 (internal quotation marks omitted). Accordingly, "[w]e will not disturb a trial court's ruling on alimony as long as the court 'exercises its discretion within the bounds and under the standards we have set and has supported its decision with adequate findings and conclusions.'" *Bell v. Bell,* 810 P.2d 489, 491 (Utah Ct.App.1991) (quoting *Naranjo v. Naranjo,* 751 P.2d 1144, 1147 (Utah Ct.App. 1988)).

¶ 7 Husband also argues that the trial court erred in ordering the parties to pay their own attorney fees. "Trial courts have broad discretion in ... awarding attorney fees. Where the trial court may exercise broad discretion, we presume the correctness of the court's decision absent ... a clear abuse of discretion." *Childs v. Childs,* 967 P.2d 942, 944 (Utah Ct.App.1998) (omission, citation, and internal quotation marks omitted).

7. The other factors—"whether the recipient spouse has custody of minor children requiring support," Utah Code Ann. § 30–3–5(8)(a)(v) (2008); "whether the recipient spouse worked in a business owned or operated by the payor

## ANALYSIS

### I. The Alimony Award

¶ 8 Husband contends that the trial court erred because it failed to consider the mandatory factors outlined in Utah Code section 30–3–5(8)(a), *see* Utah Code Ann. § 30–3–5(8)(a) (2008), namely, Husband's financial need and ability to produce income, *see id.* § 30–3–5(8)(a)(i)–(ii). Husband also claims that the trial court erred in awarding rehabilitative alimony and in improperly considering fault. Each of these arguments is considered in turn.

### A. Failure to Address Required Statutory Factors

¶ 9 Husband argues that the trial court exceeded its broad discretion by failing to consider his financial needs and earning capacity as required by statute. It is well established that the trial court must consider several factors before making an alimony award:

> Under Utah Code section 30–3–5, the trial court must consider, at a minimum, the following factors in determining alimony: "(i) the financial condition and needs of the recipient spouse; (ii) the recipient's earning capacity or ability to produce income; (iii) the ability of the payor spouse to provide support; [and] (iv) the length of the marriage...."[7]

*Riley,* 2006 UT App 214, ¶ 17, 138 P.3d 84 (quoting Utah Code Ann. § 30–3–5(8)(a)(i)–(iv)). "Failure to consider these factors [in fashioning an alimony award] constitutes an abuse of discretion." *Rehn v. Rehn,* 1999 UT App 41, ¶ 6, 974 P.2d 306; *see also Bell,* 810 P.2d at 492; *Stevens v. Stevens,* 754 P.2d 952, 958–59 (Utah Ct.App.1988). "Accordingly, the trial court must make sufficiently detailed findings of fact on each factor to enable a reviewing court to ensure that the trial court's discretionary determination was rationally based upon these ... factors." *Bell,* 810 P.2d at 492. These factual findings

spouse," *id.* § 30–3–5(8)(a)(vi); and "whether the recipient spouse directly contributed to any increase in the payor spouse's skill by paying for education," *id.* § 30–3–5(8)(a)(vii)—are not relevant to this appeal.

" 'should . . . include enough subsidiary facts to disclose the steps by which the ultimate conclusion on each factual issue was reached.' " *Rehn,* 1999 UT App 41, ¶ 6, 974 P.2d 306 (omission in original) (quoting *Stevens,* 754 P.2d at 958). "The absence of findings of fact is a fundamental defect that makes it impossible to review the issues that were briefed without invading the trial court's fact-finding domain." *Bakanowski v. Bakanowski,* 2003 UT App 357, ¶ 13, 80 P.3d 153 (internal quotation marks omitted). Thus, "[i]f sufficient findings are not made, we must reverse unless the record is clear and uncontroverted such as to allow us to apply the [statutory] factors as a matter of law on appeal." *Bell,* 810 P.2d at 492.

¶ 10 In this case, the trial court made only one finding regarding the required statutory factors: "As to the issue of alimony, the Court finds that [Husband] has demonstrated some need for alimony but has also inflated that need as demonstrated in his proposed future expenses. The Court finds that [Wife] has the ability to pay alimony." This finding simply does not "include enough subsidiary facts to disclose the steps by which the ultimate conclusion [on each statutory factor] was reached." *See Rehn,* 1999 UT App 41, ¶ 6, 974 P.2d 306 (internal quotation marks omitted). Without adequate findings of fact justifying the alimony award, we cannot determine it's validity on appeal. Accordingly, we remand for the trial court to make factual findings to support the award or to modify the award in light of Husband's need and earning capacity.

## B. Rehabilitative Versus Permanent Alimony

¶ 11 Husband contends that because of his age, the length of the marriage, and his weak employment prospects, the trial court erred in ordering that the alimony award of $1200 per month terminate after one year. While it is true that rehabilitative alimony awards are not always inequitable, there are certain situations where a rehabilitative alimony award is simply inappropriate, *see Olson v. Olson,* 704 P.2d 564, 567 (Utah 1985). We agree with Husband that such is the case here.

¶ 12 "Utah Code [section 30–3–5(8)(h) ] states that alimony may not be awarded for longer than the term of the marriage absent 'extenuating circumstances.' " *Jensen v. Jensen,* 2008 UT App 392, ¶ 16, 197 P.3d 117. However, "the Code does not bar an award for a shorter duration." *Id.* "The purpose of rehabilitative alimony is in the short run to close the gap between actual expenses and actual income to enable the receiving spouse to then be better able to support [him- or] herself when the [rehabilitative period] end[s]." *Bell v. Bell,* 810 P.2d 489, 493 n. 3 (Utah Ct.App. 1991). In determining whether a trial court has exceeded its discretion in awarding rehabilitative alimony, as opposed to traditional alimony, appellate courts consider several factors. These factors include the length of the marriage, the age of the recipient spouse, and the employment history and employability of the recipient spouse. *See Jones v. Jones,* 700 P.2d 1072, 1073, 1076 (Utah 1985) (overturning trial court's award of rehabilitative alimony where parties had been married almost thirty years and "wife [was] in her mid–50's, possesse[d] few marketable job skills, and ha[d] little hope of retraining"); *Bell* 810 P.2d at 492 n. 3 (noting that a rehabilitative award could have been appropriate where the marriage was relatively short, wife was young, college educated, independent, and had worked throughout the marriage).

¶ 13 The trial court made the following finding in support of the one-year rehabilitative award:

> It is the testimony of [Husband] that he has one year of college left before he obtains his bachelor's degree. The Court feels that this case is [an] appropriate one for a temporary award of rehabilitative alimony. Rehabilitative alimony for the one year in the amount of $1,200.00 shall be paid to [Husband] by [Wife] to allow [Husband] to finish his education. This support, coupled with the substantial sum [Husband] will receive in equity from the two properties, should be more than enough to allow [Husband] to build a life for himself which is comparable to the one he enjoyed while married.

While there was evidence that Husband had only one year of school left to complete his degree, there was also evidence that even assuming he received the degree, Husband's job prospects were bleak. Indeed, the employability report concluded that "there [we]re limited employment opportunities in [Husband's] area. Since he ... has not worked in this area and did not complete the [design graphics engineering technology] program, [Husband] would have difficulty competing with other job applicants for these limited positions." Moreover, the employability report also stated that one of Husband's employment options—an architectural, civil, or mechanical drafter—would likely yield an annual salary of only $24,980 to $31,070. Accordingly, even assuming Husband was able to complete his degree in one year and obtain a full-time position in his field-entering the workforce at fifty-three years of age—he would still be unable to meet his needs.

¶ 14 Wife contends that the rehabilitative award should be upheld based on *Jensen v. Jensen,* 2008 UT App 392, 197 P.3d 117. We disagree. In *Jensen,* the trial court awarded rehabilitative alimony to the wife for five years. *See id.* ¶ 3. In making the award, the trial court apparently found the following factors important: (1) the wife was only forty-one years old at the time of the separation; (2) the wife had marketable skills, had an associate's degree, and had worked outside the home for one-fourth of the parties' sixteen-year marriage; (3) the wife was awarded fifty percent of the parties' real and personal property; and (4) the wife had been secretly working for her father and was trying to hide her income from that job specifically so as to not impact her alimony award. *See id.* ¶ 19 & n. 7. On appeal, the wife argued that the trial court had abused its discretion in limiting the duration of the alimony award. *See id.* ¶ 15. Specifically, the wife contended that there was no evidence before the trial court "indicating that she had the necessary education or work skills to increase her income within the five-year period." *Id.* ¶ 18 (internal quotation marks omitted). In affirming, this court stated that

while the award was "vulnerable to criticism," there was sufficient evidence "presented to the trial court such that it could, within its discretion, determine that five years was a sufficient length of time for [the w]ife to 'get her house in order' so that she would no longer require support from [the h]usband." *Id.* ¶ 20.

¶ 15 *Jensen* is factually and procedurally distinguishable and therefore has little application under the facts of this case. In this case, at the time of trial Husband was fifty-two years old, and the parties had been married for twenty-five years.[8] Husband had limited marketable skills and employment prospects. Moreover, even when Husband had worked full-time during the marriage—mainly in construction and inside sales—he earned only a fraction of what Wife earned as a midwife. Husband had therefore become accustomed to a higher standard of living than he could himself provide. Additionally, there was no evidence that Husband was secretly working or hiding income from Wife like the wife in *Jensen.* Finally, the parties do not argue that there is insufficient evidence on the alimony factors. In light of the fact that *Jensen* is distinguishable, and in light of Husband's age, the length of the marriage, and Husband's weak employment prospects, we conclude that the trial court exceeded its discretion in ordering rehabilitative alimony to Husband.

C. Consideration of Fault in the Alimony Determination

■ ¶ 16 To the extent the trial court's alimony award was a consequence of his fault, Husband argues that the trial court erred in making the alimony award. Regarding Husband's fault, the trial court made the following finding: "Although fault is an appropriate consideration in awarding alimony in addition to the [mandatory statutory] factors, the Court is mindful of the Utah policy that the purpose of alimony is to provide support, *not to reward or punish.*" (Emphasis added.) However, in addressing Husband's earlier request to clarify the alimony award, the trial court stated from the bench,

8. The trial court does not appear to have considered these factors.

It really makes no difference if [Wife] had the ability to pay and [Husband] had need *based upon [Husband's] fault* . . . . [I]f the appellate courts . . . want to say that under the facts of this case somebody should get more than rehabilitative alimony, they are going to write fault right out of the statute.[9]

(Emphasis added.)

¶ 17 The trial court correctly observed that courts may consider fault in fashioning alimony awards but that "[c]onsidering the fault of a party is *distinct* from punishing a party based on fault." *Christiansen v. Christiansen*, 2003 UT App 348U, para. 9, 2003 WL 22361312 (mem) (emphasis added); *see also Davis v. Davis*, 2003 UT App 282, ¶ 9 n. 1, 76 P.3d 716. However, there is also some merit to the trial court's implicit observation that this is merely a "distinction without a difference," *see Central Fla. Invs., Inc. v. Parkwest Assocs.*, 2002 UT 3, ¶ 17, 40 P.3d 599. In other words, if a trial court uses its broad statutory discretion to consider fault in fashioning an alimony award and then, *taking that fault into consideration*, adjusts the alimony award upward or downward, it simply cannot be said that fault was not used to punish or reward either spouse by altering the award as a consequence of fault. With this legal framework in place, trial courts are left in the difficult position of trying to determine what the term "fault" means, in what context, and what, if any, consequence fault should have on an award of alimony.

¶ 18 As currently written, Utah Code section 30-3-5(8)(b) provides no meaningful guidance on this issue. Rather, the plain language simply grants trial courts discretion to consider fault in fashioning alimony awards. *See* Utah Code Ann. § 30-3-5(8)(b) (2008) ("The court may consider the fault of the parties in determining alimony."). However, the Utah Legislature has provided no definition of what, exactly, constitutes fault. Accordingly, it is unclear whether fault relates to the alternate grounds for divorce contemplated by Utah Code section 30-3-1(3), *see id.* § 30-3-1(3) (listing grounds for divorce, including impotency, adultery, deser-

tion, neglect, habitual drunkenness, felony conviction, cruel treatment, irreconcilable differences, and insanity), or if it means how the parties dealt with, for example, marital assets or liabilities, or some other behavior unrelated to the cause of the divorce. Where the legislature has not defined fault in the statute, it is virtually impossible for trial courts to quantify it, and the consequences thereof, when fashioning alimony awards. This is especially true in light of the sound no-punishment/no-reward precedent, *see Davis*, 2003 UT App 282, ¶ 9 n. 1, 76 P.3d 716, *Christiansen*, 2003 UT App 348U, para. 9, 2003 WL 22361312, which we decline to disturb here.

¶ 19 Furthermore, consideration of fault is already built into the system on virtually every issue that arises in domestic cases. For example, if one spouse is at "fault" for dissipating assets or incurring substantial debt, the trial court may require that spouse to repay what has been lost, impute income, or compensate the other spouse with a property award or other assets. Moreover, if one spouse's bad behavior has caused the other spouse to have medical issues, the trial court may consider the bad behavior when determining the recipient spouse's increased financial needs. Where the system is replete with ways in which fault is taken into account, any additional consideration of undefined fault seems superfluous.

¶ 20 We will not substitute our judgment for that of the legislature. Accordingly, until the legislature clearly defines fault in the statute, it is inappropriate to attach any consequence to the consideration of fault when making an alimony award.

## II. Attorney Fees

¶ 21 Husband argues that the trial court erred in failing to award him attorney fees because it did not make any findings regarding his needs, Wife's ability to pay, or the reasonableness of the fees. Husband's argument is misplaced. In a divorce action, the trial court "may order a party to pay the . . . attorney fees . . . of the other party."

---

9. This observation suggests that Husband's fault loomed large in the trial court's decision to award rehabilitative, rather than permanent, alimony.

Utah Code Ann. § 30–3–3(1) (Supp.2009). If a trial court uses its broad discretion to award attorney fees, "[s]uch an award must be based on sufficient findings addressing the financial need of the recipient spouse; the ability of the other spouse to pay; and the reasonableness of the fees." *Rehn v. Rehn*, 1999 UT App 41, ¶ 12, 974 P.2d 306. In this case, the trial court did not award attorney fees; rather, it ordered that "[e]ach party shall be responsible for their own legal fees and costs associated with this action." Because it awarded no attorney fees, the trial court was not required to make factual findings supporting the same.

## CONCLUSION

¶ 22 The trial court exceeded its discretion in failing to enter adequate factual findings regarding the statutorily required alimony factors. Accordingly, we reverse and remand on this issue. We also conclude that the trial court exceeded its discretion in ordering rehabilitative alimony to Husband and that any consequence for the consideration of fault on the award of alimony is inappropriate until the legislature has more clearly defined fault in the statute. Finally, we affirm the issue of attorney fees because the trial court was not required to make factual findings where it did not actually award any fees to either party.

¶ 23 I CONCUR: PAMELA T. GREENWOOD, Presiding Judge.

ORME, Judge (concurring in part and dissenting in part):

¶ 24 I concur in Parts I(A) and II of the court's opinion. I dissent from Part I(B), not so much because I disagree with all that is said there, but because I think it is premature to reach that issue. We have asked the trial court to revisit the alimony question, make more complete findings, and make a determination that properly results therefrom. It may be that that exercise will lead to no alimony, more alimony, alimony of longer duration, or alimony of a different character. We do not have the clear picture of the alimony award that we would have if more detailed findings and a fuller explanation were made by the trial court. I therefore believe it is best to reserve judgment on the propriety of rehabilitative alimony until we have that clear picture.

¶ 25 I dissent from Part I(C) because, in my view, my colleagues fail to give the Legislature its due, while at the same time inviting further legislative incursion into the management of divorce cases. In my opinion, the Legislature's clear statement that fault may be considered in alimony determinations, *see* Utah Code Ann. § 30–3–5(8)(b) (2007), represents a policy judgment that courts should take to heart and endeavor to follow. The fact that this legislative mandate is made in a broad and generalized way strongly suggests that the Legislature appreciates the multitude of factual scenarios that arise in divorce cases, recognizes the broad equitable powers traditionally enjoyed by the courts in doing justice in divorce proceedings on a case-by-case basis, and trusts the courts to flesh out the alimony/fault concept in the course of adjudication of cases over time.

¶ 26 I fear that we betray that trust and shirk that responsibility in telling the Legislature we cannot follow that policy mandate until it is spelled out more precisely. Indeed, in declining to consider fault, we are in fact "substitut[ing] our judgment for that of the Legislature," because it is plain that in using the term "fault" without a great deal of specificity, the judgment of the Legislature is precisely that the *courts* should develop the concept in the context of real disputes, rather than having the Legislature do so in a factual vacuum.

¶ 27 All of that said, I acknowledge the insightful points made in the lead opinion that will, indeed, make the exercise a difficult one. The majority is right that fault concepts are already reflected in several aspects of alimony analysis and that finding a role for fault in alimony analysis that will neither punish nor reward is intellectually perplexing and will no doubt prove challenging in practice. Still, it is appropriate to take the Legislature's mandate to heart and employ the fault concept in appropriate cases in making alimony awards.

¶ 28 Procedurally, to ensure that the role of fault can be understood by the parties and

appropriately reviewed on appeal, the trial court in a given case should first come to an alimony award based just on the usual criteria. *See id.* § 30–3–5(8)(a)(i)–(vii). If it determines that one party's fault should lower or increase the amount of the award, it should identify the precise character of the fault in question, the relevance of that fault to the matter of alimony, and the amount by which alimony should be increased or decreased by reason thereof. *Cf. Childs v. Childs,* 967 P.2d 942, 946–47 (Utah Ct.App. 1998) (affirming award of alimony where trial court considered the statutorily-required criteria and the recipient's " 'fault in engaging in an extra-marital affair' ") (quoting trial court's findings), *cert. denied,* 982 P.2d 88 (Utah 1999).

¶ 29 I would do nothing more in this case than give the trial court this guidance, for its use in reassessing its alimony determination on remand, and would reserve judgment, for now, on the propriety of considering the proper role of fault in calculating alimony in this case.