2013 UT App 105

# THE UTAH COURT OF APPEALS

NANETTE LYNN BEAL,
*Petitioner and Appellant,*
*v.*
PATRICK MICHAEL BEAL,
*Respondent and Appellee.*

Opinion
No. 20110903-CA
Filed April 25, 2013

Third District, West Jordan Department
The Honorable Mark S. Kouris
No. 074400610

David R. Hartwig, Attorney for Appellant
David S. Pace, Attorney for Appellee

JUDGE GREGORY K. ORME authored this Opinion, in which JUDGES
CAROLYN B. MCHUGH and STEPHEN L. ROTH concurred.

ORME, Judge:

¶1     After a series of three review hearings in 2010, the district court determined that Nanette Beal was not entitled to alimony from her ex-husband, Patrick Beal, under the terms of their 2007 divorce decree. Nanette appeals that determination, and we affirm.

## BACKGROUND

¶2     The Beals' divorce was finalized on September 21, 2007. The divorce decree provided Nanette $2,500 per month in "transitional alimony" from May 2007 to September 2009, when both parties

were required to convene for an alimony review.[1] For that review, the decree required both parties to exchange "all income and asset information, from any source, *including trusts*, government benefits, employment, investments, etc." (Emphasis added.) In a separate provision, the decree provided that each spouse would receive all property attributable to their respective families.

¶3     In anticipation of the mandated alimony review, Patrick requested that Nanette produce various financial documents, including copies of documents related to a trust of which Nanette is a beneficiary. At the time of their divorce, Nanette was in possession of two copies of the trust documents,[2] but she claimed to have returned those copies to her father, the trustee, sometime later.[3] On January 15, 2009, the district court ordered Nanette to provide a copy of the trust documents to Patrick within fifteen days. Despite that order, Nanette did not provide Patrick with a copy and did not make any effort to obtain a copy from her father.

¶4     On April 30, 2010, the first evidentiary hearing to review the parties' alimony status was held. Nanette still had not submitted a copy of the trust documents to either Patrick or the court. Patrick testified that both parties were aware of the trust during their marriage and that he had seen an accounting of the trust placing its

---

1. While the amount of permanent alimony remained unset, the divorce decree memorialized that alimony was to continue for a period of time equal to the length of the marriage, subject to termination on the death of either party, remarriage of Nanette, cohabitation of Nanette with a non-related person of the opposite sex, or any other statutory ground for termination.

2. When the parties separated, Nanette took the copies of the trust documents with her. Patrick was not in possession of a copy of the trust documents from that point until Nanette produced trust documentation shortly before the second evidentiary hearing.

3. Nanette never explained why, as a trust beneficiary, she chose to part with her only copies of these important documents.

value at $435,000 in 1991. Nanette testified that she had not attempted to obtain a copy of the trust documents, had not received anything from the trust, and had no expectation of receiving any income from the trust.

¶5    During the course of the hearing, the court discovered several discrepancies between Nanette's submitted financial declaration,[4] her testimony, Patrick's testimony, and other documentation submitted by the parties. In light of those discrepancies, the district court ultimately concluded that it could not make an appropriate alimony determination without supplemental briefing, argument, and an additional hearing. Accordingly, a follow-up hearing was scheduled.

¶6    Shortly before the second hearing, Nanette produced a copy of the original trust agreement, but she did not include an accounting of the trust's activities or any subsequent amendments to the trust of which Patrick testified having knowledge. Those documents—and the absent accounting—generated concerns from both the court and Patrick about whether Nanette was receiving any income from the trust, and the court concluded that questioning Nanette about the trust would be both beneficial and necessary. Nanette was not in attendance during the second hearing, however, so the district court once again continued the matter and scheduled another hearing. At that point, the court issued an order requiring Nanette to "produce all relevant and necessary documents concerning the referenced trust subject to request from [Patrick]" for review before the hearing.

¶7    The third and final hearing was held on September 7, 2010. Nanette represented to the court that she had produced all documents relevant to the trust. The amended financial declaration she submitted for the hearing showed $30,750 in loans from her

---

4. Nanette did not list the trust on her financial declaration, even though she is a named beneficiary.

father,[5] but Nanette did not put on any evidence in an effort to establish that the money did not actually come from the trust of which her father was trustee and she was beneficiary. Instead, she merely reasserted that she had not received any money from the trust.

¶8     In a written memorandum decision, the district court determined that Nanette would not be awarded any alimony. The court's decision factored in Patrick's ability to provide support and Nanette's ability to produce income. While the court was able to calculate Patrick's net disposable monthly income at a negative $303, it was unable to conclusively determine Nanette's income or ability to earn income. The court noted that Nanette had failed to timely comply with numerous court orders; that there were still unresolved discrepancies between Nanette's financial declaration, her testimony, and the submitted trust documentation; that the trust language explicitly stated that the trust was "intended for the personal protection and welfare" of Nanette; and that Patrick testified that by the terms of the trust, Nanette was entitled to receive all assets of the trust.[6] The district court concluded that because it could not "ascertain [Nanette's] ability to earn," there was no reason to evaluate her financial need and she was not entitled to any further alimony.

## ISSUES AND STANDARDS OF REVIEW

¶9     Nanette first challenges the district court's analytical framework, arguing that it could only "terminate" her alimony

---

5. The debt had increased $15,000 from her previous financial statement and had grown in fairly regular $3,000 increments.

6. Patrick testified that the trust originally provided for full disbursement of the trust assets to Nanette when she turned forty. The trust was amended while the parties were still married to change the payout age to fifty. Nanette was older than fifty at the time of the third hearing.

upon a showing of a substantial change in circumstances. *See Wells v. Wells*, 871 P.2d 1036, 1040 (Utah Ct. App. 1994) ("On a petition to modify a divorce decree, the threshold requirement is a showing of a substantial change of circumstances since entry of the divorce decree."). Whether the district court applied the proper legal standard is a question of law that is reviewed for correctness. *Chen v. Stewart*, 2004 UT 82, ¶ 19, 100 P.3d 1177.

¶10 Nanette also challenges the district court's alimony determination. In essence, Nanette argues that the court erred both in requiring her to produce all trust documents and in relying on the documents she did produce in determining its award. Courts have wide latitude in determining alimony awards, and we will not overturn an alimony determination "unless a clear and prejudicial abuse of discretion is demonstrated." *Riley v. Riley*, 2006 UT App 214, ¶ 15, 138 P.3d 84 (citations and internal quotation marks omitted).

## I. Alimony Framework

¶11 Nanette contends that the "transitional alimony" awarded in the divorce decree was actually a final and permanent alimony award. As such, she maintains that the award can only be changed if Patrick adequately demonstrates a substantial change in circumstances. We disagree. Alimony awards come in different varieties. *See, e.g.*, *Wells*, 871 P.2d at 1038–39 (analyzing court's ability to award temporary alimony); *Bell v. Bell*, 810 P.2d 489, 493 n.3 (Utah Ct. App. 1991) ("The purpose of rehabilitative alimony is in the short run to close the gap between actual expenses and actual income to enable the receiving spouse to then be better able to support herself when the alimony and schooling end."); *Petersen v. Petersen*, 737 P.2d 237, 242 n.4 (Utah Ct. App. 1987) (observing that "reimbursement" alimony is sometimes appropriate). And several of those variants are not considered permanent alimony awards. *See Wells*, 871 P.2d at 1039 (indicating that temporary alimony is separate and distinct from permanent alimony).

¶12    While the award here was not expressly characterized as a temporary award, the plain meaning of the phrase "transitional alimony" and the clear intent of the divorce decree demonstrate that the award was not meant to be permanent. "Transition" is not synonymous with permanence, but rather relates to "a passage or movement from one state, condition, or place to another." *See Webster's Third New Int'l Dictionary* 2428 (1993). Therefore, the decree's "transitional" award is, by definition, an award that is subject to change. Within the framework of this divorce decree, which calls for an alimony review after two years and following the exchange of information that would permit the calculation of a permanent alimony award, an award intended to be reviewed and changed cannot reasonably be viewed as permanent.

¶13    From all that appears, the transitional alimony award and delayed review were intended to put the requisite statutory alimony determination on hold for two years to provide Nanette adequate time to complete her ongoing education and otherwise transition into her new circumstances. While courts have broad discretion in fashioning permanent alimony awards, they must at least consider the following factors:

> (i) the financial condition and needs of the recipient spouse;
> (ii) the recipient's earning capacity or ability to produce income;
> (iii) the ability of the payor spouse to provide support;
> (iv) the length of the marriage;
> (v) whether the recipient spouse has custody of minor children requiring support;
> (vi) whether the recipient spouse worked in a business owned or operated by the payor spouse; and
> (vii) whether the recipient spouse directly contributed to any increase in the payor spouse's skill by paying for education received by the payor

> spouse or allowing the payor spouse to attend school during the marriage.

Utah Code Ann. § 30-3-5(8)(a) (LexisNexis Supp. 2012).[7] *See Jensen v. Jensen*, 2008 UT App 392, ¶ 9, 197 P.3d 117. There is nothing in the divorce decree or record to demonstrate that these factors were analyzed at all before the district court granted the $2,500 per month transitional alimony.[8] Instead, the court specifically left that analysis for another day and gave Nanette a transitional award in the interim. When the parties finally reconvened in April 2010, it was incumbent upon the court to engage in a detailed analysis of those statutory factors—which it did—rather than require Patrick to demonstrate why the transitional award should not simply be made permanent. We conclude that the court applied the correct legal standard and that substantial-change-in-circumstances analysis is not applicable in this situation.

## II. Alimony Determination

¶14 Nanette argues that the district court erred in requiring her to produce all of the trust documents and in factoring the documents she did provide into its alimony determination. In making its determination, the district court was required to consider "the recipient's earning capacity or ability to produce income." Utah Code Ann. § 30-3-5(8)(a)(ii) (LexisNexis Supp. 2012). Without question, a trust of which Nanette is a beneficiary and that

---

7. Because the provisions in effect at the relevant time do not differ materially from the statutory provisions now in effect, we cite the most recent version of the Utah Code as a convenience to the reader.

8. The notably round figure of $2,500 is itself suggestive of a number that was simply agreed to or considered as a plausible ballpark figure rather than one that emerged from the careful calculations contemplated by section 30-3-5(8)(a).

was created "for [her] personal protection and welfare" is both an asset and a potential source of income.

¶15    Under the law of both Utah and Arizona, where the trust was formed, a trust beneficiary is unqualifiedly entitled to a copy of any trust instrument that describes or affects the beneficiary's interest. *See* Utah Code Ann. § 75-7-811(2)(a) (LexisNexis Supp. 2012); Ariz. Rev. Stat. Ann. § 14-10813(B)(1) (2012). A trust beneficiary is also entitled in both states to a yearly report of the trust property, liabilities, receipts, and disbursements. *See* Utah Code Ann. § 75-7-811(3); Ariz. Rev. Stat. Ann. § 14-10813(C). Therefore, Nanette was in a position to timely produce all of the requested trust documentation to Patrick and to the court via a demand for copies from her father, the trustee. Rather than complying with multiple production requests and court orders, however, Nanette chose not to produce any documents for well over a year without any explanation. Even after she finally produced a copy of the original trust instrument, Nanette did not provide an accounting of the trust's activities, generating more concerns and questions from the district court. The court was ultimately saddled with numerous abnormalities and discrepancies, including the ever-increasing debt allegedly owed to Nanette's father and the fact that she had apparently become entitled to the trust proceeds. With the limited information before it, the court simply had no way to accurately calculate Nanette's income stream.

CONCLUSION

¶16    Because the district court was not modifying the amount of permanent alimony set in the divorce decree but setting an initial permanent award, the court was correct to analyze the statutory factors under Utah Code section 30-3-5(8)(a). Nanette was in a position to timely and fully produce all of the requested trust documentation, which she did not do. Given the numerous discrepancies and unresolved issues identified by the court,

coupled with Nanette's relative lack of cooperation and candor, we cannot conclude that the district court abused its discretion in determining that Nanette had not demonstrated that she was entitled to an award of permanent alimony.

¶17    Affirmed.[9]

————

9. Patrick seeks an award of attorney fees incurred on appeal. Because the district court ordered the parties to pay their own fees below, we decline to award attorney fees on appeal. *See Larson v. Larson*, 888 P.2d 719, 727 (Utah Ct. App. 1994).