IN THE UTAH COURT OF APPEALS

----ooOoo----

| | | |
|---|---|---|
| Paige Christine Farnsworth, | ) | OPINION |
| | ) | |
| Petitioner and Appellee, | ) | Case No. 20110317-CA |
| | ) | |
| v. | ) | F I L E D |
| | ) | (October 12, 2012) |
| Loren Kelly Farnsworth, | ) | |
| | ) | 2012 UT App 282 |
| Respondent and Appellant. | ) | |

-----

Seventh District, Castle Dale Department, 104700061
The Honorable Douglas B. Thomas

Attorneys:    Don M. Torgerson and Samuel P. Chiara, Price, for Appellant
              McKette H. Allred, Castle Dale, for Appellee

-----

Before Judges Orme, Thorne, and McHugh.

THORNE, Judge:

¶1     Loren Kelly Farnsworth (Husband) appeals from the district court's Decree of
Divorce and Findings of Facts and Conclusions of Law, which awarded Paige Christine
Farnsworth (Wife) alimony in the amount of $1,300 a month. We affirm the district
court's determination that Wife will have a monthly housing expense of approximately
$700, and this opinion represents the majority opinion on that issue. We reverse the
district court's alimony award to the extent that it relied on a finding that Wife's
monthly need included $200 for animal feed for a minor daughter's horses and livestock
animals. On this second issue, Judge McHugh's separate opinion represents the
majority opinion of the court.

BACKGROUND

¶2      Husband and Wife married in August 1988. Shortly thereafter, they acquired a 1900s-era house on 2.83 acres of real property, where they lived together with their children for the duration of the marriage. Wife maintained horses on the property, and the children raised horses and other livestock animals for 4-H Club. The parties never made any improvements to the house and only made critical repairs as necessary. Early on, this was because they feared that they might lose the house. After the house was paid off, most of the parties' discretionary income went toward supporting Husband's hunting hobby, and the house fell further into disrepair. At the time of trial, the house and property together appraised at $68,000.

¶3      Wife petitioned for divorce in May 2010 after learning that Husband was having an affair. At this time, the parties' only remaining minor child was a 12-year-old daughter (Daughter). The parties reached a settlement on all outstanding issues in the divorce except for alimony and property division. Pursuant to the parties' settlement, Wife was to have primary physical custody of Daughter, and Husband was to pay $712 in monthly child support. The matter went to trial on the remaining issues in February 2011.

¶4      At trial, the proper amount to attribute to Wife's monthly housing expenses was disputed. Husband argued that Wife should be awarded the paid-off marital home to live in, leaving her with minimal monthly housing expenses. In the alternative, Husband argued that Wife's housing expenses should be limited to an amount that would reflect the standard of living that had been established over the course of the marriage, i.e., $450 per month reflecting the mortgage payment on a $68,000 property. Wife did not want to continue living in the marital home due to the needed repairs and testified that she had found a suitable home and property in the area that was available for purchase at $185,000. Wife argued for a monthly housing expense of $912, the amount required to service a $185,000 mortgage. Wife also testified that apartments in the area rented for $600 a month but that if she lived in an apartment she would have to board the horses at a cost of $200 per horse per month.[1]

_____

[1]At the time of trial, Wife testified that she cared for four horses on the marital property, two belonging to Daughter and two belonging to an adult daughter of the

(continued...)

¶5    The parties also disputed Wife's claimed $300 monthly expense for care of the horses and livestock. Husband argued that Wife's actual monthly expense for the animals was less than $300, but he also objected to the animal expenses being considered in the alimony equation at all. Husband argued that the horses and livestock animals belonged to the parties' children and that he should not be required to pay alimony based on an expense that would cease to be Wife's responsibility once Daughter attained the age of majority.[2]

¶6    At the conclusion of trial, the district court issued an oral ruling. The district court awarded the marital home and property to Husband. Husband was ordered to pay Wife one half of the appraised value, or $34,000, as her equity in the property. The district court also ordered that all of the parties' personal property, with the exception of certain horses and property belonging to or used by the parties' children, be sold. The proceeds were to be used to retire the debt on a horse trailer, with any remaining proceeds to be divided equally between the parties.

¶7    The district court found that Wife's housing expenses would be $700 or $710 per month, reflecting the mortgage payment on a hypothetical $140,000 home and horse property. The district court rejected Wife's proposed purchase of the $185,000 house, finding that "that is likely excessive when compared to the home that has been enjoyed during the marriage, and the lifestyle that was enjoyed during the marriage." However, the district court also rejected Husband's argument that Wife should remain in the marital home or be limited to servicing a $68,000 mortgage.

¶8    The district court made extensive fact findings on the housing issue. The court found that the bulk of the $68,000 value of the marital home and property was attributable to the value of the land, that the home had been "allowed to fall into substantial disrepair recently," and that Husband was chiefly responsible for the state of disrepair. The court determined that Wife did not "have the skills to be able to bring [the] home into a habitable structure" but that Husband did. The court then stated,

---

[1](...continued)
parties. Wife testified that she had personally owned a fifth horse but that it had recently died.

[2]Husband did offer at trial to pay 50% or even 75% of the expenses for Daughter's animals during the period that she would remain a minor.

The Court believes, particularly in light of the fact that [Wife] is going to have custody of the [parties'] minor child, who is a young child, that it's appropriate for [Wife] to be able to find living arrangements that she can—where she can house the child similar to where they have lived that would be habitable. And while [a] $180,000 home may not be appropriate, the Court does believe that she should be able to find something in the neighborhood of $140,000, including horse property, that would allow her to maintain the minor child in a lifestyle and with the type of home that the parties have enjoyed during the marriage.

In determining that Wife's monthly expense for this $140,000 housing would be $700 to $710, the court observed that "[Wife] testified that she cannot rent a home for anything less than—not even a home, but an apartment, for less than $600 per month."

¶9     On the issue of animal expenses, the district court allocated Wife a $200 per month expense for feed for Daughter's two horses and livestock, stating that such an amount would be "fair and appropriate." The court acknowledged that Wife was also caring for the adult daughter's two horses but stated that the adult daughter "also has some responsibility" for those horses.

¶10     The district court determined that Wife's net income from her two jobs was $1,100 per month and her total monthly income—taking into account the $712 per month child support award—was $1,812. Wife's monthly expenses—including the housing and animal expenses described above—were found to be between $3,130 and $3,140, leaving her with unmet financial need of roughly $1,300 per month. The district court found that Husband's monthly income was $5,396, with $2,070 per month available to pay alimony after expenses. The district court subtracted an additional $560 from Husband's available income to account for what the district court estimated might be as much as $70,000 in needed repairs to the marital home. Even with this deduction, Husband's available income remained sufficient to cover Wife's unmet need, and the district court awarded Wife $1,300 per month in alimony for a period of time equal to the duration of the marriage, roughly twenty-two years.

¶11     The district court issued its Decree of Divorce and Findings of Facts and Conclusions of Law on March 15, 2011. The district court's written findings largely

reflected its oral ruling, including its $1,300 alimony award. The written findings included "that [Husband] allowed the home to fall in disrepair," that "[Husband] bears the responsibility for the home's decline in value," and that "[Daughter] deserves to have an appropriate place to live and stay when she is with each parent." The district court also clarified its ruling on the animal expenses, stating, "The Court will allow $200.00 a month for the horses and animal feed. This accounts for [Daughter's] two horses and stock feed. The adult child will need to be responsible to pay for her two horses." Husband appeals.

ISSUES AND STANDARD OF REVIEW

¶12 Husband argues that the district court abused its discretion in determining Wife's housing expenses based on a home worth $140,000 when the parties' home during the marriage was only worth $68,000. Husband also argues that it was an abuse of discretion to allow Wife $200 in monthly expenses for Daughter's animal feed when those expenses would cease to be Wife's responsibility once Daughter reached the age of majority. Husband argues that these two determinations erroneously increased the district court's determination of Wife's total monthly need and resulted in an inflated alimony award. "'In a divorce proceeding, the trial court may make such orders concerning property distribution and alimony as are equitable. The trial court has broad latitude in such matters, and orders distributing property and setting alimony will not be lightly disturbed.'" *Olsen v. Olsen*, 2007 UT App 296, ¶ 8, 169 P.3d 765 (quoting *Jones v. Jones*, 700 P.2d 1072, 1074 (Utah 1985)). "Therefore, we review alimony awards under an abuse of discretion standard." *Id.*

ANALYSIS

¶13 Husband challenges the district court's alimony award, arguing that two erroneous rulings by the district court resulted in an artificially high determination of Wife's unmet financial need. Husband argues that Wife's monthly housing expenses should have been limited to much less than the approximately $700 per month found by the district court. Husband also argues that the $200 per month for Daughter's horse and livestock feed should not have been treated as part of Wife's need for purposes of the alimony determination. Reducing Wife's housing expenses and eliminating the animal feed expense would reduce Wife's established monthly need—and, as a result,

Husband's monthly alimony obligation—by hundreds of dollars.  *See generally Bingham v. Bingham*, 872 P.2d 1065, 1068 (Utah Ct. App. 1994) ("[T]he spouse's demonstrated need must . . . constitute the maximum permissible alimony award.").  We are thus called upon to determine whether the district court exceeded the boundaries of its discretion in calculating Wife's monthly financial need based on expenses of $700 for housing and $200 for the feeding of Daughter's horses and livestock animals.

## I.  Wife's Housing Expenses

¶14    Husband's first argument is that the district court's determination of Wife's housing expenses should have been limited to placing Wife in the same standard of living that she had enjoyed over the twenty-plus years of the parties' marriage.  According to Husband, this standard of living constituted a hundred-year-old, $68,000 home rather than the hypothetical $140,000 home that the district court used in determining Wife's monthly housing need.  Husband also argues that the district court's determination that the marital home would need $70,000 of repairs, after which it would also be worth $140,000, was a "transparent effort to justify the inflated housing costs for Wife" and attempted to equalize the parties' income in violation of precedent.[3]  *See Sellers v. Sellers*, 2010 UT App 393, ¶ 3, 246 P.3d 173 (mem.) ("[T]he courts will equalize the incomes of the parties only in those situations in which one party does not earn enough to cover his or her demonstrated needs and the other party does not have the ability to pay enough to cover those needs.").

¶15    We see no abuse of discretion in the district court's use of a hypothetical $140,000 home to determine that Wife's monthly housing costs would range from $700 to $710 per month.  It is undisputed that Wife was accustomed to living in a single-family home on property suitable for keeping horses, making that the appropriate measure of her

---

[3]Husband also asserts that the district court expressly indicated that it had "no intention of limiting its alimony award to Wife's historical standard of living" when it stated, "'It's unrealistic for [Husband] to presume that [Husband's] *going to get away with* a $300 or $400 alimony a month award on a 22 ½ year marriage.'" (Alterations in original.)  Husband misrepresents the district court's actual comment, which was, "It's unrealistic for him, *when he's earning approximately $7,500 a month and she's earning $1,200 a month*, to presume that he's going to get away with a $300 or $400 alimony a month award on a 22-1/2 year marriage." (Emphasis added.)

housing needs. *See generally Martinez v. Martinez*, 818 P.2d 538, 542 (Utah 1991) ("Usually the needs of the spouses are assessed in light of the standard of living they had during marriage."). The district court rejected Wife's proposed $185,000 home, but nevertheless determined that she was entitled to living arrangements "where she can house [Daughter] similar to where they have lived that would be habitable."

¶16    Husband does not challenge the district court's determination that such housing arrangements would cost approximately $140,000; rather, Husband focuses on the age, size, and value of the marital home to argue that Wife should be limited to housing costing $68,000. This argument fails to account for the district court's determinations that Wife was entitled to *habitable* housing and that the marital home was currently *uninhabitable* due to Husband's neglect.[4] Further, the court made express findings that the $68,000 appraisal of the marital home largely reflected the value of the real property, that there was "little value in the home," and that Husband "bears the responsibility for the home's decline in value." In light of these considerations, the $68,000 value of the marital home has little relevance in determining Wife's current need for habitable housing for herself, Daughter, and the horses.[5]

¶17    As to the district court's findings regarding repairs to the marital home, we agree with Husband that there is scant evidence in the record to support the district court's findings that the marital home would require $70,000 of repairs and would be worth

---

[4]Although the district court did not expressly find that the marital home was uninhabitable, that is the unmistakable inference from its findings that the marital home was in "disrepair" and that repairs would be necessary to "bring the home into a habitable structure."

[5]The district court also observed that "[Wife] testified that she cannot rent a home for anything less than—not even a home, but an apartment, for less than $600 per month." Wife also testified that, if she rented an apartment, boarding for the horses would cost "a couple hundred per horse." Had the district court opted to base Wife's housing needs on an apartment and boarding for two horses, her testimony would have supported a monthly need of $1,000, a figure greater than the $900 to $910 per month that the district court actually allocated for Wife's housing and horse-related needs.

$140,000 thereafter.[6] However, contrary to Husband's assertions, the district court's findings do not appear to have been used to inflate Wife's housing costs or equalize the parties' incomes or housing situations. Rather, the district court recognized that Husband would likely have to incur expenses to render the marital home habitable and credited those expenses against the amount of Husband's income that was available to pay alimony. Thus, the district court's findings regarding repairs did not increase Wife's alimony award in any way but instead benefitted Husband by recognizing that necessary repair costs would reduce the funds available for him to pay alimony. *See generally Fish v. Fish*, 2010 UT App 292, ¶ 12, 242 P.3d 787 ("In fashioning an alimony award, the trial court is required to consider the payor spouse's ability to pay . . . .").

¶18    Ultimately, it appears that the district court was asked to choose between two opposing narratives presented by the parties: Husband's narrative, wherein the parties jointly decided to live in substandard conditions so that they were financially able to pursue their mutual hobbies, and Wife's narrative, wherein Husband controlled the bulk of the parties' income and chose to spend it on hunting rather than on maintaining the marital home in a habitable condition. Clearly, the district court adopted Wife's narrative over Husband's, and having done so, did not abuse its discretion in basing Wife's—and Daughter's—housing needs on a reasonable, habitable residence rather than the unsuitable housing situation maintained by Husband.[7] For this reason, we decline to disturb the district court's determination of Wife's housing expenses.

---

[6]The district court also found that "[Husband] has the skills necessary to bring the home into a habitable structure." We agree with Husband that there is little in the record to support this finding, but we consider the finding irrelevant to the district court's determination of Wife's need.

[7]Contrary to the assertion expressed in Judge Orme's separate opinion, we do not view the district court's decision as one based on Husband's fault. Rather, the district court's observation that Husband bore the responsibility for the decline in value of the marital home is properly seen as a finding that Wife did *not* cause that condition and should not have her current housing need reduced because of it. The district court properly determined Wife's reasonable need for habitable housing for herself, Daughter, and the horses and livestock. Whether the marital home was insufficient to meet that need because of Husband's neglect or some other reason, such as a flood or fire, is largely irrelevant to the determination of Wife's current need.

## II. Feeding Expenses for Daughter's Animals

¶19    Husband also challenges the district court's finding that Wife had need of $200 per month for the feeding of Daughter's horses and livestock.  Husband characterizes these expenses as Daughter's "hobby" expenses and argues that, by treating them as part of Wife's financial need, the district court "converted [Daughter's] fluctuating temporary expense into the Wife's fixed, long-term need."  The majority opinion of the court, reflected in Judge McHugh's separate opinion, is that the district court erred in allocating the animal expenses as a part of Wife's financial need because those expenses were attributable to Daughter.  However, in my opinion, the district court's finding was within its discretion under the circumstances.

¶20    The majority opinion cites *Davis v. Davis*, 2011 UT App 311, 263 P.3d 520, for the proposition that particular expenses attributable to children may not be awarded as child support in addition to the amount specified by the child support guidelines unless the district court enters separate findings justifying the departure from the guidelines. *See id.* ¶¶ 16–18.  However, the district court did not award the animal expenses as child support but rather considered those expenses as part of Wife's overall financial need for purposes of establishing alimony.  The question before this court, then, is whether the district court properly used those expenses in its alimony determination.  Whether and under what circumstances such expenses could be awarded as child support exceeding the statutory guidelines is, in my opinion,[8] irrelevant so long as the expenses can properly be viewed as part of Wife's overall financial need for alimony purposes.  *See generally* Utah Code Ann. § 30-3-5(8)(a) (Supp. 2012) ("The court shall consider at least

---

[8]Even if the majority opinion is correct that the animal expenses must be treated under the rules governing child support, the district court should not be precluded from entering further findings on this issue on remand.  The district court has already found that, even with the stipulated child support, Wife's income is insufficient to cover Daughter's animal expenses in addition to Wife's other needs.  On remand, Wife should be entitled to seek additional child support to cover the animal expenses, which the district court can award upon a specific finding that failing to award such expenses would be "'unjust, inappropriate, or not in [Daughter's] best interest.'" *See Davis v. Davis*, 2011 UT App 311, ¶ 17, 263 P.3d 520 (quoting Utah Code Ann. § 78B-12-210(3) (2008)).

the following factors in determining alimony:  (i) the financial condition and needs of the recipient spouse . . . .").

¶21    Husband's argument that the expenses must be treated as child support focuses on the fact that the horses and livestock in question belong to Daughter, who will reach the age of majority many years before the expiration of Husband's alimony obligation.[9] However, the totality of the evidence before the district court paints a broader picture. It appears undisputed that Wife will actually be paying for the animals' care at least through the remainder of Daughter's minority.  But it is also clear that the animals, and particularly the horses, were a part of Wife's established standard of living regardless of their actual ownership.  Wife testified that she rode horses herself when she could and that she rode the horses belonging to the parties' daughters.  She also testified that she had personally owned a horse until it died several weeks before trial.  And, as discussed above, Wife's housing needs were determined with the understanding that Wife would be purchasing a "horse property," further suggesting that Wife was accustomed to a horse-owning lifestyle.

¶22    In light of the totality of the evidence, I see no abuse of discretion in the district court's treatment of the animal expenses as a part of Wife's standard of living, at least as of the time of trial.  Wife will be paying for the animals' care at least through the end of Daughter's minority.  But even after Daughter reaches the age of majority, Wife will presumably continue to consider access to horses to be an ongoing part of her customary lifestyle.  Wife owned her own horse until it died shortly before trial, and it would be completely consistent with her standard of living during the marriage if she were to purchase her own horse at some point in the future.  Further, the district court's housing allowance contemplates Wife establishing her new residence on a horse property.[10]  All of these factors convince me that the district court acted within its

---

[9]Husband argues that he stipulated at trial that he would pay a portion of Daughter's animal expenses in addition to child support but that such payments should terminate upon Daughter reaching the age of majority, five or six years after trial.

[10]Husband's argument makes no distinction between the horses and the livestock.  I recognize that there is less support in the record for treating the livestock animals as part of Wife's lifestyle than there is for the horses.  However, Wife did testify that in the year prior to trial, Daughter had raised three pigs, one of which was

(continued...)

"broad discretion" in determining that Wife's financial need should include the animal expenses.

¶23 Finally, Wife is correct that any future changes in her financial needs can be dealt with through a motion to modify alimony, if circumstances warrant. *See generally* Utah Code Ann. § 30-3-5(8)(g)(i) ("The court has continuing jurisdiction to make substantive changes and new orders regarding alimony based on a substantial material change in circumstances not foreseeable at the time of the divorce."). As to the current award, I see no abuse of discretion regarding the animal expenses in light of evidence that the horses were a part of Wife's established standard of living, regardless of their actual ownership by Daughter.[11] I therefore am compelled to write separately from the majority opinion of the court on this issue, which can be found in Judge McHugh's separate opinion.

CONCLUSION

¶24 Husband has not established that the district court abused its broad discretion in determining Wife's housing need. *See generally Olsen v. Olsen*, 2007 UT App 296, ¶ 8,

---

[10](...continued)

slaughtered rather than sold. This use of Daughter's animals for family food purposes suggests that, at least in part, the livestock were more than Daughter's mere hobby and contributed to Wife's overall lifestyle in a way that Wife might choose to continue into the indefinite future.

[11]Even if the expenses in this case were clearly Daughter's rather than Wife's, I am not at all sure that the rule against ordering the payment of extracurricular activity costs as *child support* precludes the consideration of such costs as part of determining a recipient spouse's overall need for purposes of awarding *alimony*. *See generally Davis*, 2011 UT App 311, ¶¶ 16–18 (holding that payment of school fees may not be ordered as child support without supporting findings). Parents incur many expenses for their minor children, and an award of child support will often not entirely cover those expenses. Yet, those expenses remain a part of a recipient spouse's financial need, at least during the children's minority. It may well be appropriate to consider such expenses as part of a recipient spouse's overall need for alimony purposes, even though the recipient spouse is paying them on behalf of a minor child.

169 P.3d 765 (stating that the district court has "broad latitude" to "make such orders concerning property distribution and alimony as are equitable"). In reaching its determination that Wife's monthly housing expense would be $700 to $710, the district court properly considered Wife and Daughter's need for a habitable residence, Wife's available housing options, and Husband's neglect of the marital home and its resulting decrease in value and habitability. These factors adequately support the district court's determination as to Wife's housing need, and we affirm that determination.

¶25    On Husband's second issue, the majority opinion of the court is that the district court erred when it included $200 of expenses for Daughter's animals in Wife's overall monthly need. That majority opinion is found in Judge McHugh's separate opinion, in which Judge Orme joins. My own conclusion on this issue, stated in the body of this opinion, is that the district court acted within its discretion in determining that Wife was entitled to a $200 monthly expense for animal feed. However, in accordance with the majority opinion of the court, we reverse the district court on this issue and remand for further proceedings consistent with the majority opinion.


_____
William A. Thorne Jr., Judge


-----


McHUGH, Judge (concurring in part and dissenting in part):

¶26    I concur with part I of Judge Thorne's decision, but dissent from part II, which would affirm the inclusion of $200 per month in the alimony award for the cost of feeding Daughter's horses and livestock. Because Judge Orme concurs with me, this decision represents the court's majority opinion on that issue.

¶27    As a general rule, the expenses related to minor children should be included in the child support award, not as part of the alimony obligation. *See Chambers v. Chambers*, 840 P.2d 841, 843 n.1 (Utah Ct. App. 1992) ("If the child support that the parties stipulated to is insufficient to cover the children's expenses, then the court must award sufficient child support, not increase alimony to include the children's expenses."). Furthermore, a party may be ordered to pay the expenses related to a

child's activities, in addition to child support, only to the extent that the payor spouse voluntarily agrees to do so. *See Davis v. Davis*, 2011 UT App 311, ¶¶ 16–18, 263 P.3d 520 (holding that school fees were "part and parcel of the child support award" and could not be separately awarded, absent the payor spouse's assent, without separate findings justifying a child support award exceeding the guidelines (internal quotation marks omitted)).[12]

¶28    There is nothing in the record suggesting that Husband agreed to pay the expenses related to the care and feeding of Daughter's horses in addition to the amount of his monthly child support obligation. Nor is there anything to indicate that the district court awarded the $200 per month in alimony for any purpose other than the care and feeding of Daughter's horses. Under these circumstances, we hold that the district court exceeded its discretion by including the expenses related to Daughter's equestrian activities in calculating the amount of alimony.

_____
Carolyn B. McHugh, Judge

-----

ORME, Judge (concurring specially):

¶29    I concur in Judge McHugh's opinion concerning the treatment of Daughter's hobby expenses. I concur in the result reached in section I of Judge Thorne's opinion

_____

[12]Judge Thorne argues that we should affirm the district court's inclusion of the costs associated with Daughter's horses as part of the alimony award because the district court "considered those expenses as part of Wife's overall financial need." *See supra* ¶ 20. However, under that approach, any expenses related to the sports, hobbies, vacations, lessons, or other activities of minor children could be added to an alimony award, thereby circumventing the limitations discussed in *Davis v. Davis*, 2011 UT App 311, 263 P.3d 520. *See id.* ¶¶ 16–18. In addition, by characterizing these expenses as part of Wife's financial need, the obligation to pay them may, as in this case, extend well beyond Daughter's attainment of majority.

concerning the handling of Wife's housing expenses. With respect to the latter, the resolution seems fair and equitable under all the circumstances. It strikes me as a bit of a stretch to get there, however, strictly in terms of the standard of living "enjoyed" by the parties during the marriage. To elevate a lifestyle featuring a $68,000 marital residence, with a dwelling in disrepair, to one featuring a property worth $140,000 simply because horses roamed the grounds of the martial residence seems hard to justify.

¶30    Significantly, the district court found that the poor condition of the marital dwelling was not due to a mutual decision of the parties, but to Husband's neglect. Indeed, in concluding that the $68,000 property value was attributable all but exclusively to the value of the land, the district court determined that Husband "bears the responsibility for the home's decline in value."

¶31    I am not persuaded that a simple "standard of living during the marriage" analysis justifies treating Wife as having housing expenses attributable to a $140,000 home. But if due regard is given to Husband's fault in reducing the parties' standard of living during the marriage to one that was artificially low, at least as concerns housing, the trial court's analysis is sound. I recognize that the trial court did not use the word "fault" in its analysis, possibly because of the controversy that the concept has generated in our jurisprudence,[13] but it is clear to me that this is exactly what the trial court had in mind in making its alimony award. And "fault" is an appropriate factor to consider in awarding alimony. *See* Utah Code Ann. § 30-3-5(8)(b) (2008) ("The court may consider the fault of the parties in determining alimony."); *Riley v. Riley*, 2006 UT

---

[13]*Compare Mark v. Mark*, 2009 UT App 374, ¶¶ 18, 20, 223 P.3d 476 (stating that "[a]s currently written, Utah Code section 30-3-5(8)(b) provides no meaningful guidance" on how to consider the fault of the parties in determining alimony and holding that "until the legislature clearly defines fault in the statute, it is inappropriate to attach any consequence to the consideration of fault when making an alimony award"); *with id.* ¶ 25 (Orme, J., dissenting) ("[T]he Legislature's clear statement that fault may be considered in alimony determinations represents a policy judgment that courts should take to heart and endeavor to follow.") (internal citation omitted). *See also Meyers v. Meyers*, 2010 UT App 74, ¶¶11–12 & n.3, 231 P.3d 815 (discussing the discrepancy between the holdings in *Mark* and *Riley v. Riley*, 2006 UT App 214, 138 P.3d 84), *aff'd*, 2011 UT 65.

App 214, ¶ 18 & n.2, 138 P.3d 84 (recognizing the Legislature's enactment of section 5(8)(b) and the resulting authorization for "trial court's to consider fault in determining alimony awards"); *id.* ¶ 23 (holding that "Husband's fault goes a long way in explaining the propriety of a $900 per month alimony award, even though such an award would be too high if only economic factors were considered").

_____

Gregory K. Orme, Judge