2013 UT App 232

# THE UTAH COURT OF APPEALS

CHRISTINE WOOLUMS,
Petitioner and Appellee,
*v.*
JASON DOUGLAS WOOLUMS,
Respondent and Appellant.

Opinion
No. 20120591-CA
Filed September 26, 2013

First District, Brigham City Department
The Honorable Ben H. Hadfield
No. 104100363

Daniel R. Cragun, J. Jarom Bishop, Ryan J. Stanger,
and Colby B. Vogt, Attorneys for Appellant
R. Christian Hansen, Attorney for Appellee

JUDGE WILLIAM A. THORNE JR.[1] authored this Opinion, in which
JUDGE STEPHEN L. ROTH concurred. JUDGE GREGORY K. ORME
concurred in part and dissented in part, with opinion.

THORNE, Judge:

¶1     Jason Douglas Woolums (Husband) appeals the district court's order awarding alimony of $579 per month to Christine Woolums (Wife) for a period of time equal to the duration of the parties' marriage. We affirm.

---

1. Judge William A. Thorne Jr. participated in and voted on this case as a regular member of the Utah Court of Appeals. He retired from the court before this decision issued.

BACKGROUND

¶2    Husband and Wife married on July 19, 1996. The marriage produced three children, all of whom were minors at the time of trial. The parties separated in May 2010, and Wife filed for divorce in November of that year. Before trial, Husband and Wife settled their child custody and support issues. However, they could not reach an agreement on property division, division of marital debts, and alimony, and the matter proceeded to trial on those issues on April 18, 2012.

¶3    At trial, the parties presented evidence of their respective financial need and income for purposes of establishing an alimony award. To demonstrate her financial need, Wife presented an Amended Financial Declaration to the court detailing her monthly expenses. Wife testified at trial that her claimed expenses totaled $3,406 and included a mixture of current expenses and prospective expenditures that Wife expected to incur as she got settled. These prospective expenditures included renter's insurance, residential maintenance costs, a telephone landline and internet connection, insurance premiums, and estimated car payments. Wife provided bills verifying her water, electricity, sewer, garbage, and cell phone expenses but did not provide receipts or other documentary proof for her other current and prospective expenses. The district court reduced Wife's claimed monthly residential maintenance expense from $50 to $10 and adjusted her monthly incidental expenses upward from $25 to $75, but it otherwise accepted Wife's figures. Ultimately, the district court determined that Wife's monthly expenses—including certain debts that Wife agreed to pay—totaled $3,466.

¶4    As to her income, Wife provided the district court with a W-2 form showing an annual income of $7,502. However, Wife also presented evidence that her annual 10% religious tithing was $1,226, suggesting an annual income of $12,260. At the time of trial, Wife worked part-time for the Box Elder School District for twenty-five hours a week at $11.58 an hour. She had looked unsuccessfully

for full-time work, but could only locate additional part-time work that started at minimum wage and could increase to about $10 per hour for florist work, at which Wife had some experience. In light of this evidence, the district court imputed Wife's gross income to be $1,581 per month or $18,972 per year, representing her actual part-time income plus imputed income at the minimum wage of $7.25 an hour for the balance of a full-time work week.

¶5 During their marriage, the parties had incurred tens of thousands of dollars of marital debt. Prior to trial, both parties agreed that Husband would assume 93% of the outstanding marital debt in order for him to ensure his good credit rating, avoid bankruptcy, and keep the security clearance required by his current job. One of the debts that Husband agreed to pay was a loan from Husband's mother for $50,000. The parties had made thirty $500 monthly payments and one $1,500 payment toward this loan over the course of the marriage, but they had not made any payments during the last seven months of their marriage. Despite the parties' fairly consistent history of $500 monthly payments, the district court allocated Husband only $100 per month toward servicing that particular loan. The district court reasoned that there was no note evidencing the loan, there was no formal payment schedule, and Husband's ability to repay his mother would increase over time as he paid off other debts.

¶6 In light of this and other evidence, the district court determined that Wife had an unmet monthly need of $1,045 and that Husband had the ability to pay $579 per month in alimony. Accordingly, the court ordered Husband to pay $579 in monthly alimony. Husband argued that the alimony should be rehabilitative in nature and last for some period less than the fourteen-year duration of the marriage. However, the district court awarded traditional alimony for a period equal to the entire duration of the marriage, reasoning that the couple had been married for fourteen years, Wife was thirty-four years old, and Wife had not received any specialized job training or education beyond the high school level. Husband appeals the district court's alimony award.

ISSUES AND STANDARD OF REVIEW

¶7    Husband raises multiple issues on appeal, challenging the district court's determination of Wife's financial need and income, its treatment of the marital debts, and its award of traditional rather than rehabilitative alimony. We will not disturb the district court's alimony award unless Husband can demonstrate "'a clear and prejudicial abuse of discretion'" by the district court. *Mark v. Mark*, 2009 UT App 374, ¶ 6, 223 P.3d 476 (quoting *Riley v. Riley*, 2006 UT App 214, ¶ 15, 138 P.3d 84).

ANALYSIS

I. Wife's Financial Need

¶8    Husband's first argument is that the district court abused its discretion when it accepted Wife's testimony as to many of her claimed expenses even though those expenses were not yet being incurred at the time of trial and Wife did not provide documentary evidence in support of her testimony. Husband interprets our prior decisions in *Mark v. Mark*, 2009 UT App 374, 223 P.3d 476, and *Jensen v. Jensen*, 2008 UT App 392, 197 P.3d 117, as imposing a requirement that the determination of expenses for purposes of alimony computation must be based on current, actual expenses that are documented by receipts, billing statements, or other physical evidence. *See Mark*, 2009 UT App 374, ¶¶ 8–10 (remanding alimony issue to district court in light of inadequate factual findings to support the award); *Jensen*, 2008 UT App 392, ¶ 12 (affirming district court's reduction of "'overstated and exaggerated'" claimed expenses).

¶9    Husband's argument that expenses must be current expenses that are actually being incurred at the time of trial is foreclosed by Utah case law addressing this exact issue. This court has disavowed the notion that "standard of living is determined by actual expenses alone." *Howell v. Howell*, 806 P.2d 1209, 1212 (Utah

Ct. App. 1991). A party's current, actual expenses "may be necessarily lower than needed to maintain an appropriate standard of living for various reasons, including, possibly, lack of income." *Id*. It is thus incumbent upon the district court to determine the amount necessary to maintain the standard of living established over the course of the marriage rather than the amount that is actually being spent at the time of trial. *See id.*; *see also Farnsworth v. Farnsworth*, 2012 UT App 282, ¶ 15, 288 P.3d 298 (affirming district court's finding that a prospective housing expense would be $700 to $710 per month based on a hypothetical $140,000 house).

¶10     We are similarly unpersuaded by Husband's argument that Wife was required to provide documentary evidence in support of her claimed expenses. Wife provided bills documenting many of her current expenses, including her water, electricity, and cell phone. As to her other claimed expenses, Wife testified as to the amounts she was claiming and why. The district court largely accepted Wife's testimony, reducing only her claimed residential maintenance expense while increasing her claimed incidental expenses. The district court's evaluation of and reliance on Wife's testimony, along with its own determinations of the reasonableness of the claimed expenses, fell squarely within its broad discretion to determine an appropriate alimony award. *See Black v. Black*, 2008 UT App 465, ¶ 11, 199 P.3d 371 ("Trial courts are given broad discretion to address issues related to alimony."); *see also Farnsworth*, 2012 UT App 282, ¶¶ 4, 15–16 & n.5 (affirming the district court's housing expense determination based on testimony as to the cost of new housing versus an apartment rental and horse boarding); *Davis v. Davis*, 2003 UT App 282, ¶ 10 n.3, 76 P.3d 716 (affirming the district court's determination of a reasonable car payment based solely on testimony).[2]

---

2. We note that in the absence of an applicable statute of frauds or similar requirement of written evidence, triers of fact are generally permitted—although not required—to accept oral testimony as a legitimate basis for factual findings. This is true across the

(continued...)

¶11   In light of these cases, the district court's discretion clearly encompasses basing its alimony determinations on testimony as to both existing expenses and future expenses that are necessary to maintain an appropriate standard of living.[3] Here, the district court relied on Wife's testimony, along with some documentary evidence, to determine Wife's financial need. We affirm the district court's determination as falling well within the boundaries of its discretion.

## II. Wife's Income

¶12   Husband argues that the court abused its discretion when it imputed additional part-time income to Wife at the minimum wage of $7.25 per hour rather than the $10 per hour she could make with her floral experience. Husband also argues that the district court failed to consider all sources of Wife's income because her religious tithing suggested an annual income greater than that reflected on her W-2 form. We see no abuse of discretion in the district court's determinations regarding Wife's income. *See Griffith*

---

2. (...continued)

spectrum of legal contexts, and we see no reason for a different rule pertaining to alimony determinations. *See, e.g.*, *State v. Cecil*, 2012 UT App 280, ¶ 11, 288 P.3d 22 (stating that testimony that the defendant "'accelerated into the hoist' from a stop ten to fifteen feet away and 'crashed right into the engine hoist' is clearly adequate to support a finding that [the defendant] intentionally struck the hoist"); *Carbon Cnty. v. Department of Workforce Servs.*, 2012 UT App 4, ¶ 10, 269 P.3d 969 (stating that testimony provided "'relevant evidence [that] a reasonable mind might accept as adequate' . . . to support the Board's factual findings" (alteration in original) (citation omitted)), *aff'd*, 2013 UT 41.

3. We do not intend to discourage parties from providing documentary evidence of their expenses if such evidence is available, and we observe that such evidence is likely to be considerably more persuasive than testimony alone.

*v. Griffith*, 1999 UT 78, ¶ 19, 985 P.2d 255 ("[T]rial courts have broad discretion in selecting an appropriate method of assessing a spouse's income and will not be overturned absent an abuse of discretion.").

¶13 The district court's imputation of part-time income to Wife in the amount of $7.25 an hour is supported by evidence at trial. Wife testified that she had sought part-time employment from multiple potential employers but that most of them offered only minimum wage. Wife testified that she had inquired at two floral shops, and both had indicated that she would start any part-time work at minimum wage and that, even with her experience, her wage would never exceed $10 per hour. Husband points to no evidence contradicting Wife's testimony on this issue. In light of Wife's undisputed testimony that any part-time employment she might obtain would start at minimum wage, we see no abuse of discretion in the district court's decision to impute additional part-time income in that amount. *See Busche v. Busche*, 2012 UT App 16, ¶ 24, 272 P.3d 748 (stating that the district court has the discretion to determine "whether income ought to be imputed . . . , and if so, how much").

¶14 Husband also complains that the district court relied on Wife's W-2 form to establish her annual income of $7,502 when her 10% religious tithing of $1,226 suggested an actual annual income of $12,260. Husband argues that the district court's failure to account for this discrepancy violated its obligation to "consider all sources of income" in making its alimony determination. *See Breinholt v. Breinholt*, 905 P.2d 877, 880 (Utah Ct. App. 1995) (citation and internal quotation marks omitted). Wife asserts on appeal that the discrepancy resulted from her paying tithing on the child support she received from Husband in addition to her employment income. Although Wife acknowledges that there is no direct record evidence to support this assertion, it is not inconsistent with her testimony, and we observe that Husband declined to file a reply brief refuting Wife's claim.

¶15 In any event, Husband acknowledges that any error arising from the discrepancy between Wife's W-2 form and her tithing statement would only prejudice him if the annual income suggested by Wife's tithing exceeded the total amount of Wife's actual and imputed income as determined by the district court. The district court determined that Wife's actual and imputed annual income totaled $18,972—an amount greatly exceeding the amount suggested by her tithing. Accordingly, Husband has suffered no prejudice, and we will not disturb the district court's determination of Wife's total actual and imputed income. *See Mark v. Mark*, 2009 UT App 374, ¶ 6, 223 P.3d 476 ("Alimony determinations will be upheld on appeal unless a clear *and prejudicial* abuse of discretion is demonstrated." (emphasis added) (citation and internal quotation marks omitted)).

## III. Marital Debt

¶16 Husband next raises two arguments pertaining to the district court's treatment of the parties' marital debt for purposes of determining alimony. Husband argues that the district court's alimony award failed to adequately account for his voluntary assumption of 93% of the marital debt and that the district court abused its discretion in reducing his monthly debt service expense on a loan from his mother from $500 to $100.

¶17 Husband argues that he was entitled to receive some unspecified accommodation in the district court's alimony award in exchange for his assumption of the vast majority of the marital debt. *See Boyer v. Boyer*, 2011 UT App 141, ¶ 11, 259 P.3d 1063 (balancing the district court's allocation of marital debt to husband against its unequal property division in favor of husband). Assuming that this argument is not completely foreclosed by Husband's voluntary assumption of the debt, we observe that Husband did receive a benefit from the debt allocation—the ability to ensure the payment of the debt and avoid any negative impact on the security clearance required by his current employment. *See id.* (affirming unequal debt allocation where district court "made Husband responsible for the debt to decrease the likelihood of a

bankruptcy, which could result in adverse professional consequences for Husband"). We see no abuse of discretion in the district court's decision not to further accommodate Husband's voluntary debt assumption in the alimony award.

¶18 Husband also argues that the parties had historically made $500 monthly payments to retire a $50,000 marital loan from Husband's mother and that the district court abused its discretion when it allowed Husband only a $100 monthly expense to service that debt going forward. However, the district court justified its decision with findings that there was no note evidencing the loan, there was no formal payment schedule, and Husband's ability to repay the loan would increase over time as he paid off other debts. Further, the record reflects that the parties missed multiple monthly payments over the course of the marriage and divorce litigation with no apparent consequence.[4] In light of the lack of a promissory note, the parties' informal and sporadic payment history, and the district court's recognition that Husband's ability to pay off the loan would increase over time, we see no abuse of discretion in the decision to allow Husband only a $100 monthly allocation for servicing the flexible loan from his mother.[5]

IV. Traditional Alimony

¶19 Finally, Husband challenges the district court's decision to award traditional alimony for a period of time equal to the

---

4. Husband acknowledges on appeal that when the missed payments are taken into account, the parties' average monthly payment on the loan was only $415.

5. The dissenting opinion's analysis of this issue would have represented a justifiable exercise of discretion had the district court chosen to employ it. However, the district court also acted within its discretion when it elected to reprioritize the payment schedule on the loan from Husband's mother in light of the absence of fixed repayment terms.

duration of the parties' marriage, arguing that Wife's circumstances are more amenable to a shorter-term award of rehabilitative alimony. *Compare Bell v. Bell*, 810 P.2d 489, 491–92 (Utah Ct. App. 1991) ("The most important function of [traditional] alimony is to provide support for the wife as nearly as possible at the standard of living she enjoyed during the marriage, and to prevent the wife from becoming a public charge." (citation and internal quotation marks omitted)), *with Mark v. Mark*, 2009 UT App 374, ¶ 12, 223 P.3d 476 (stating that the purpose of rehabilitative alimony is to close the immediate gap between expenses and income and to enable the recipient spouse to become more self-sufficient by the end of the rehabilitative period). Husband argues that the facts of this case are comparable to those in *Boyer v. Boyer*, 2011 UT App 141, 259 P.3d 1063, which this court described as "precisely the context in which a rehabilitative alimony award may be appropriate." *Id.* ¶ 17.

¶20 In *Boyer*, we reaffirmed that "'[t]he length of the marriage, the age of the recipient spouse, and the employment history and employability of the recipient spouse' are relevant factors to consider in determining whether an award of rehabilitative alimony, rather than traditional alimony, is appropriate." *Id.* (quoting *Mark*, 2009 UT App 374, ¶ 12). The recipient spouse in *Boyer* was thirty-eight years old, worked part-time at $11.50 per hour, and possessed significant professional skills, and the duration of the parties' marriage was approximately fourteen years. *See id.* ¶¶ 2, 17. We agree with Husband that these facts are roughly comparable to the circumstances facing Wife in this case.

¶21 However, while Husband correctly cites *Boyer* for the proposition that these facts would support an award of rehabilitative alimony, *Boyer* expressly recognized that the same facts would *also* support a traditional alimony award. *See id.* ¶ 19 ("Given the circumstances of this case, neither ruling would be an abuse of the trial court's discretion."). In light of this express language of approval based on roughly similar facts, we cannot say that the district court abused its discretion by awarding traditional alimony to Wife in the present case.

CONCLUSION

¶22    We conclude that Husband has failed to demonstrate that any of the district court's rulings pertaining to Wife's expenses and income, the marital debt, or the question of traditional versus rehabilitative alimony constituted an abuse of the district court's broad discretion to determine matters pertaining to alimony. We therefore affirm the district court's alimony award.

————————

ORME, Judge (concurring in part and dissenting in part):

¶23    I concur in the court's opinion in all respects but one. The loan from Husband's mother seems to have been on a much firmer footing than the intra-family "loans" that sometimes surface in divorce cases. *See generally Finlayson v. Finlayson*, 874 P.2d 843, 848 (Utah Ct. App. 1994) ("Whether moneys received from close family members represent a gift or a debt can be problematic."). While there may not have been a note memorializing the loan in the instant case, there was a firmly established payment schedule of $500 per month. *Cf. Baker v. Baker*, 866 P.2d 540, 543 (Utah Ct. App. 1993) (holding that evidence was sufficient to support trial court's finding that loan from husband's parents was not a gift, even though no note memorialized debt, where husband and his parents had always viewed the money as a loan and there was evidence of payment history). Thirty such payments were made. And the one $1500 payment was presumably just a single check covering three months. The fact that seven payments were missed as the marriage was winding down did not mean the debt had vaporized; rather, it meant that the family was readjusting to the financial realities of divorce and that Husband's mother was inclined to cut them a little slack.

¶24    Especially because the district court was willing to take into account expenses that Wife was not currently incurring, but soon would be, it should have similarly allocated to Husband's expense column the historical payment schedule on the debt owed to his

mother, namely $500 per month, even though repayment had been briefly suspended. This expense was even more firmly demonstrated than were several of Wife's claimed future expenses recognized by the district court, which were based solely on her own testimony as to her plans for the future and her estimates about the additional costs those plans would entail.

¶25   I would remand the case for the limited purpose of having the district court recompute the monthly alimony amount payable by Husband, taking into account the full amount of this $500 per month expense for debt payment.

————