2010 UT App 22

**Marian C. OLSON, Petitioner and Appellant,**

v.

**Bradley L. OLSON, Respondent and Appellee.**

**No. 20080666–CA.**

Court of Appeals of Utah.

Feb. 4, 2010.

M. Darin Hammond, Ogden, for Appellant.

Joseph M. Chambers, Logan, for Appellee.

Before Judges DAVIS, McHUGH, and THORNE.

## OPINION

THORNE, Judge:

¶ 1 This appeal arises from a divorce action between Marian C. Olson (Wife) and Bradley L. Olson (Husband). Wife appeals from the district court's judgment and decree of divorce. We affirm.

## BACKGROUND

¶ 2 The parties married in 1989, separated in 2004, and initiated this divorce proceeding in 2005. There were no children born into the marriage. A trial on property distribution and alimony issues took place in February 2008, and the district court issued its

findings of fact, conclusions of law, and decree of divorce in July 2008.

¶ 3 Among the contested issues at trial was the appropriate treatment of the parties' family corporation, B & B Drywall. The parties were 50/50 shareholders in B & B Drywall and were its sole officers and directors. By the time of the divorce, B & B Drywall had essentially no assets but significant amounts of debt. This debt included outstanding loans owing to Cache Valley Bank (CVB) in the amount of approximately $326,000, LKL Associates (LKL) in the amount of approximately $41,000, and Capitol Building Supply (CBS) in the amount of approximately $62,000. Husband had personally guaranteed each of these three loans, but Wife had guaranteed only the LKL debt.

¶ 4 The district court found that the parties had so commingled their personal and corporate finances "that in order ... to make an equitable division of the marital property and debts, it is reasonable and equitable to treat all of the parties['] personal and business assets and business debts as marital debts and make an equitable division of the same." Accordingly, the district court ordered that the marital home be sold and the proceeds be used, in part, to retire the debt to CVB.[1] The district court also ordered that Husband was to assume the CBS debt, Wife was to assume the LKL debt, and each party was to hold the other harmless as regards the assumed debts.

¶ 5 As to alimony, the district court awarded Wife $1000 per month, "to be paid beginning 30 days after closing" on the sale of the marital home and terminating eighteen years after July 1, 2008, unless earlier terminated by law. The delay in implementing the alimony payment appears to reflect the fact,

found by the district court, that Wife had been in exclusive possession of the marital home since December 2004 and was living there subject only to the payment of property taxes and insurance. The district court also expressly recognized that Wife's financial need would increase upon the sale of the marital home and the resulting necessity for Wife to obtain other housing arrangements.

¶ 6 Wife now appeals, raising multiple challenges to various district court rulings. Due to inadequacies in Wife's appellate briefing,[2] we address only some of Wife's issues on appeal. See, e.g., Valcarce v. Fitzgerald, 961 P.2d 305, 313 (Utah 1998) ("It is well established that an appellate court will decline to consider an argument that a party has failed to adequately brief.").

## ISSUES AND STANDARDS OF REVIEW

¶ 7 Wife raises several arguments attacking the district court's treatment of the parties' corporate debt in its property distribution order. "'We afford the trial court considerable latitude in adjusting financial and property interests, and its actions are entitled to a presumption of validity.'" Leppert v. Leppert, 2009 UT App 10, ¶ 9, 200 P.3d 223 (quoting Davis v. Davis, 2003 UT App 282, ¶ 8, 76 P.3d 716).

> Accordingly, changes will be made in a trial court's property division determination in a divorce action only if there was a misunderstanding or misapplication of the law resulting in substantial and prejudicial error, the evidence clearly preponderated against the findings, or such a serious inequity has resulted as to manifest a clear abuse of discretion.

Id. (internal quotation marks omitted).

¶ 8 Wife challenges the amount and timing of the district court's alimony award.

---

1. The district court entered specific findings as to how the proceeds of the sale of the marital home were to be applied. After the payment of costs relating to the sale, the first $108,000 of the proceeds were to go to Wife to compensate her for her premarital interest in the home, the next $326,000 was to retire the CVB debt, and any remainder was to be split equally between the parties. The district court valued the home at $550,000.

2. There are numerous technical defects in Wife's appellate brief, including Wife's failure to identi-

fy the standard of appellate review for each individual issue raised, see generally Utah R.App. P. 24(a)(5); identify where in the record her issues were preserved in the district court, see generally id. R. 24(a)(5)(A); or provide page references in her table of authorities, see generally id. R. 24(a)(3). Additionally, many of Wife's dozen issues on appeal are argued only cursorily in one or two paragraphs, with no reasoned argument or citation to relevant authority. See generally id. R. 24(a)(9).

The district court is granted "considerable discretion in determining alimony," *id.* ¶ 8 (internal quotation marks omitted), and its alimony determinations "will be upheld on appeal unless a clear and prejudicial abuse of discretion is demonstrated," *id.* (internal quotation marks omitted).

¶ 9 Wife challenges the district court's factual finding as to the value of the marital home. We review a district court's factual findings only for clear error. *See Davis,* 2003 UT App 282, ¶ 7, 76 P.3d 716.

¶ 10 Finally, Wife challenges the district court's purported disallowance of testimony from one of Wife's fact witnesses. We review the district court's evidentiary rulings under an abuse of discretion standard. *See In re G.C.,* 2008 UT App 270, ¶ 9, 191 P.3d 55; *see also Vigil v. Division of Child & Family Servs.,* 2005 UT App 43, ¶ 8, 107 P.3d 716 ("Trial courts are afforded broad discretion in determining the admissibility of evidence; thus we will not disturb a trial court's ruling whether to admit or exclude evidence absent an abuse of discretion.").

## ANALYSIS

### I. Corporate Debt as Marital Debt

¶ 11 Wife raises several related arguments pertaining to the district court's treatment of B & B Drywall's corporate debt as marital debt and the district court's equitable apportionment of that debt between the parties. Specifically, Wife argues that the district court's ruling requiring the parties to sell the marital home to pay off B & B Drywall's debt to CVB violates Utah Code section 30–2–5, *see* Utah Code Ann. § 30–2–5(1) (Supp. 2009) (stating that, with certain exceptions, "[n]either spouse is personally liable for the separate debts, obligations, or liabilities of the other"); the district court erred in finding Wife liable to CVB because she did not personally guarantee B & B Drywall's debt to CVB; and the district court erred in its apportionment of the CBS and LKL debts because Wife had not personally guaranteed the CBS debt.

¶ 12 Wife's arguments mischaracterize the district court's actual ruling, which neither imposed direct liability on Wife for the CVB debt nor imposed liability against either party based on their personal guarantees of B & B Drywall's corporate debt. Rather, the district court found that the parties had so commingled their personal and corporate finances that it was appropriate to treat the corporate debt as marital property and apportion it as part of the overall property division. The district court concluded,

> [Husband] has demonstrated that the strict observance of the corporation would lead to an inequitable result. For several years the parties have received substantial financial benefits from a corporation which they largely disregarded when it came to taking money from the corporation for their personal benefit. . . . There has been such a co-mingling of the corporate funds with the marital assets acquired by the parties that it would be inequitable to treat the assets of the parties as marital assets and try to divide them equitably while disregarding the debts of the corporation from which the parties directly received the financial benefit.

Accordingly, the district court disregarded B & B Drywall's corporate form utilizing the equitable alter ego doctrine as discussed in *Colman v. Colman,* 743 P.2d 782, 786–88 (Utah Ct.App.1987).

¶ 13 *Colman,* which was also a divorce case,[3] stated as follows:

> To disregard the corporate entity under the equitable alter ego doctrine, two circumstances must be shown: (1) Such a unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist, but the corporation is, instead, the alter ego of one or a few individuals; and (2) if observed, the corporate form would sanction a fraud, promote injustice, or result in an inequity. It is not necessary that the plaintiff prove actual fraud, but must only show that fail-

---

**3.** In *Colman,* this court noted, "Former spouses attempting to shield assets from a court-ordered property distribution by using a corporate form are especially looked upon with judicial disfavor." *Colman v. Colman,* 743 P.2d 782, 787 (Utah Ct.App.1987).

ure to pierce the corporate veil would result in an injustice.

Certain factors which are deemed significant, although not conclusive, in determining whether this test has been met include: (1) undercapitalization of a one-man corporation; (2) failure to observe corporate formalities; (3) nonpayment of dividends; (4) siphoning of corporate funds by the dominant stockholder; (5) nonfunctioning of other officers or directors; (6) absence of corporate records; (7) the use of the corporation as a facade for operations of the dominant stockholder or stockholders; and (8) the use of the corporate entity in promoting injustice or fraud.

*Id.* at 786.

¶ 14 The district court made extensive findings addressing the *Colman* factors as they apply to this case:

In addressing the *Colman* factors set forth above, the [district c]ourt is satisfied that: (1) at the time the divorce was filed the corporation was insolvent and by stipulation of the parties was placed into a court-supervised receivership and was undercapitalized; (2) based on [Wife's] own testimony they discussed matters almost daily but failed to observe the corporate formalities of holding shareholders' or directors' meetings; (3) there was no evidence of the payment of dividends and in fact the [B & B Drywall] corporate tax returns and other corporate financial records placed into evidence disclose no dividends were paid; (4) the parties knowingly and willfully siphoned off corporate funds to their own personal benefit; (5) other than the parties there were no other functioning officers or directors; (6) no evidence either way was produced as to the absence or existence of corporate records [and the district court] therefore finds this factor neutral; (7) the manner in which the parties used the corporation for their personal financial benefit as dominant shareholders would be a facade; and (8) use of the corporate entity or shell to obtain a financial benefit as to the assets but not the debt would promote an injustice.

The district court then arrived at its conclusion, quoted above, *see supra* ¶ 12, that the parties had commingled their corporate and personal finances and that equity required a distribution of the corporate debts between the parties.

¶ 15 Wife argues against the application of *Colman* to this case, but in light of the district court's findings we are not persuaded that the district court applied *Colman* in error. And, while Wife cursorily challenges certain of the district court's factual findings,[4] she has not demonstrated that its factual findings as a whole are clearly erroneous or fail to support the legal conclusion that B & B Drywall's corporate form should be disregarded in this case. Accordingly, we uphold the district court's application of *Colman's* alter ego doctrine to equitably apportion B & B Drywall's debt between the parties.

¶ 16 Returning to Wife's specific arguments on appeal, we determine that they lack merit in light of the district court's *Colman* determination. Wife argues that the district court's requirement that the marital home be sold to pay off the CVB debt violates Utah Code section 30-2-5 by holding her liable for the debts of Husband. *See generally* Utah Code Ann. § 30-2-5(1). However, the CVB debt was B & B Drywall's debt, only guaranteed by Husband,[5] and the district court properly determined that B & B Drywall's debts were marital debts.

---

**4.** For example, Wife asserts that B & B Drywall's "shareholders and officers *did* hold corporate meetings, maintained a corporate book and therefore did observe corporate formalities." However, Wife's only record citation in support of this assertion is to her own testimony, where she mentioned the existence of a "corporate book" and described her involvement in shareholder meetings: "We had some. We didn't have them often, and we didn't have scheduled. But we did have a few." Immediately thereafter,

Wife clarified the nature of these meetings: "We didn't really make decisions on the company like what we were going to do. Maybe buy a new boom lift or something, but nothing to do with the company really."

**5.** Wife characterizes the CVB debt, as well as the CBS debt, as Husband's because Husband personally guaranteed those two debts while Wife did not.

¶ 17 Wife's argument that she should not be held liable to CVB because she did not personally guarantee the CVB debt is without merit for the same reason. To the extent that the forced home sale can be characterized as personal liability, it is direct liability for marital debt incurred by the parties' corporation and does not depend on a personal guarantee theory.

¶ 18 Finally, Wife argues that the district court inequitably divided the LKL and CBS debts between the parties because "[Wife] only personally guaranteed the LKL debt while [Husband] personally guaranteed *both* of the debts." Again, we see no merit to Wife's argument, as the district court divided these corporate debts between the parties not on the basis of the personal guarantees but, rather, in accordance with its determination that all of B & B Drywall's debts were marital in nature and were to be equitably distributed between the parties.

¶ 19 In light of the district court's findings of fact and conclusions of law applying *Colman* to this case, Wife has identified no abuse of discretion in the district court's equitable apportionment of B & B Drywall's debts. Accordingly, we affirm the district court's property division.

## II. Alimony

¶ 20 Wife argues that the district court erred in its rulings related to alimony. Specifically, Wife argues that she should have been awarded $2000 per month alimony rather than the $1000 per month ordered by the district court, that the award should have been awarded retroactively to 2006 instead of delayed pending the sale of the marital home, and that the district court's alimony award was inequitable due to the district court's failure to consider certain factors, primarily the parties' standard of living at the time of divorce.

¶ 21 As to Wife's argument that the alimony award should have been $2000 per month, Wife focuses exclusively on Husband's substantially greater income and asserts that an "award of $2000 per month alimony would basically equalize the income status of the parties." This argument is unavailing. "[R]egardless of the payor spouse's ability to pay more, 'the [recipient] spouse's demonstrated need must ... constitute the maximum permissible alimony award.' " *Jensen v. Jensen*, 2008 UT App 392, ¶ 13, 197 P.3d 117 (second alteration and omission in original) (quoting *Bingham v. Bingham*, 872 P.2d 1065, 1068 (Utah Ct.App. 1994)). Wife does not challenge the district court's determination of her need and therefore provides us with no basis upon which to increase the alimony award to $2000 monthly.

¶ 22 As to the timing of the award, Wife argues that the district court erred in tying the onset of alimony payments to the sale of the marital home. She argues that alimony should have instead been awarded retroactively to 2006, when Husband began a new job.[6] However, the district court's linkage of alimony payments to the sale of the home clearly reflects the district court's factual finding that Wife was living rent-free in the home at the time of the decree. The district court recognized that Wife would incur housing expenses, with a resulting increase in overall need, only upon the sale of the marital home. Under these circumstances, Wife has not demonstrated that the district court's decision to delay alimony payments until the sale of the home exceeded the bounds of its discretion.

¶ 23 Finally, Wife argues that the district court's alimony award was inequitable, asserting that the district court failed to consider the parties' standards of living at the time of separation, Husband's admitted adultery, and Wife's lack of marketable skills. To the contrary, the district court expressly stated that it *had* considered "the parties['] standard of living at separation," "fault," and "[Wife's] earning capacity." Although the district court provided little detail as to its consideration of these factors, Wife argues only that the district court failed to consider them at all. Wife does not argue that the district court misapplied the factors or otherwise abused its discretion, and we accept the district court's statement that it considered

6. Wife presents no legal authority in support of either of her timing arguments.

all applicable factors. Accordingly, we decline to disturb the alimony award on this basis.

¶ 24 We will uphold a district court's determination of alimony "unless a clear and prejudicial abuse of discretion is demonstrated." *Leppert v. Leppert*, 2009 UT App 10, ¶ 8, 200 P.3d 223 (internal quotation marks omitted). Wife has made no such showing, and we therefore affirm the district court's alimony award.

### III. Valuation of the Marital Home

¶ 25 Wife next argues that the district court's factual finding that the marital home was worth $550,000 at the time of trial is unsupported by evidence in the record. Even relying solely on Wife's description of the district court's methodology, we see no clear error in the value figure settled on by the district court.

¶ 26 Wife argues that the home was appraised for $480,000 in November 2005, that the appraiser testified to a five to ten percent general annual appreciation for Cache Valley real estate during the years 2006 and 2007, and that the house required foundation repair estimated to cost between twenty-five and thirty-five thousand dollars. Thus, even assuming only two years of appreciation, by the time of the district court's April 2008 valuation ruling the evidence supported a range of values. At the low end—assuming five percent simple annual appreciation and a $35,000 repair cost—the evidence would support a value of $493,000. At the high end-based on ten percent appreciation and a $25,000 repair cost—the evidence Wife describes would support a value finding of $551,000. Wife demonstrates no clear error when the district court chose a value within the range of values supported by the evidence before it.

¶ 27 Further, Wife admits that Husband testified to his own opinion that the home was worth at least $550,000. "Generally, a knowledgeable owner may testify as to the market value of property." *ProMax Dev. Corp. v. Mattson*, 943 P.2d 247, 258 (Utah Ct.App.1997). Here, the district court made specific factual findings detailing the parties' involvement in the construction of the home through B & B Drywall. In light of these findings, Husband qualifies as a "knowledgeable owner" competent to testify about the home's value. *See id.* ("In this case, the trial court specifically found that Mr. Mattson was involved with the home's construction. Thus, Mr. Mattson was not merely a novice homeowner, but was qualified to give his opinion as to his home's value."). Husband's competent testimony provides further support for the district court's valuation finding.

¶ 28 Wife has not demonstrated that the district court's valuation of the marital home at $550,000 as of April 2008 was clearly erroneous. Accordingly, we will not disturb the district court's finding.

### IV. Exclusion of Testimony by Wife's Expert

¶ 29 Finally, we address Wife's argument that the district court erred when it excluded fact testimony from certified public accountant Jack Peterson. Wife called Peterson as a witness in an attempt to establish Husband's income during the marriage. In 2001, Peterson had conducted an analysis of Husband's income pursuant to separate child support litigation between Husband and his prior spouse. Nevertheless, Wife argues that the district court erred "in considering Mr. Peterson an expert witness and omitting his testimony and should have allowed Mr. Peterson's testimony as a factual witness." Wife's argument mischaracterizes the district court's actual ruling.

¶ 30 Upon Wife calling Peterson as a witness, Husband objected that Peterson had not been listed as an expert witness, that Wife had not provided an expert report from Peterson, and that Husband had therefore declined to depose Peterson. Wife responded that Peterson was being called solely as a factual witness, and the district court ruled that Peterson could "testify to facts but not give an opinion." Husband renewed his objection when Wife prepared to examine Peterson about a letter Peterson prepared after his 2001 analysis of Husband's income. The district court then clarified that Peterson could not testify as to his ultimate opinion of

Husband's income and could "say factual basis but not … opinion-type thing." Ultimately, Wife asked Peterson only his name and address, occupation, and whether and when he had conducted an evaluation of Husband's income.

¶ 31 A district court is given considerable discretion in making evidentiary rulings. *See In re G.C.*, 2008 UT App 270, ¶ 9, 191 P.3d 55 (stating that a trial court's evidentiary rulings " 'generally entail a good deal of discretion' "). Clearly, Peterson's opinions resulting from the 2001 income analysis would have constituted expert testimony, and the district court acted within its discretion in excluding those opinions. *See Pete v. Youngblood*, 2006 UT App 303, ¶¶ 11, 18, 141 P.3d 629 (holding that a trial court did not abuse its discretion by striking an expert's affidavit when the proponent neither designated the witness as an expert nor filed an expert report). The district court did indicate that Peterson could testify as to "factual basis," but Wife failed to ask Peterson any questions eliciting admissible facts that he may have known.

¶ 32 The district court's actual ruling—that Peterson could testify to facts but not expert opinions—is supported by case law and falls well within the district court's discretion. Accordingly, Wife has demonstrated no error in the district court's ruling on Peterson's testimony.

## CONCLUSION

¶ 33 Wife has failed to identify any abuse of discretion in the district court's property division, alimony, or evidentiary rulings, nor has she demonstrated clear error in the district court's valuation of the marital home. Accordingly, we affirm the district court's judgment and decree of divorce.

¶ 34 WE CONCUR: JAMES Z. DAVIS, Presiding Judge, and CAROLYN B. McHUGH, Associate Presiding Judge.