2016 UT App 29

## THE UTAH COURT OF APPEALS

TERRY C. OSBORNE,
Appellant,
*v.*
KYLENE H. OSBORNE,
Appellee.

Opinion
No. 20150022-CA
Filed February 11, 2016

Fourth District Court, Provo Department
The Honorable David N. Mortensen
No. 114402509

Chad C. Shattuck and Spencer K. Ricks, Attorneys
for Appellant

D. Grant Dickinson, Attorney for Appellee

JUDGE KATE A. TOOMEY authored this Opinion, in which JUDGE
GREGORY K. ORME and JUSTICE JOHN A. PEARCE concurred.[1]

TOOMEY, Judge:

¶1     Terry C. Osborne (Husband) appeals from the trial court's
second amended divorce decree, challenging the property
distribution and award of alimony. We affirm in part, reverse in
part, and remand.

---

1. Justice John A. Pearce began his work on this case as a
member of the Utah Court of Appeals. He became a member of
the Utah Supreme Court thereafter and completed his work on
this case sitting by special assignment as authorized by law. *See
generally* Utah R. Jud. Admin. 3-108(3).

BACKGROUND

¶2 Husband and Kylene H. Osborne (Wife) were married in 1989 and had one child together.[2] Husband petitioned for divorce in 2011, and after a bench trial in early 2014, the trial court entered findings of fact and conclusions of law and a decree of divorce. Husband raised a number of objections in a motion to amend judgment. The court granted this motion in part and denied it in part, and ultimately entered a second amended divorce decree dissolving the parties' marriage, awarding physical custody of the child to Wife, and resolving various issues including alimony and the distribution of property.

¶3 The trial court's second amended decree awarded the marital home—a house the parties purchased during their marriage—to Wife, but ordered her to refinance the mortgage or sell it. It ordered an equal division of the equity or, in the event of a sale, an even split of the proceeds. The court found that Wife's valuation of the house was consistent with the current tax value shown in one of Husband's exhibits, and Husband testified the parties currently owed $167,000 on the house. Based on these findings, the court determined the parties had $188,400 in equity in the house.[3]

---

2. "On appeal from a bench trial, we view the evidence in a light most favorable to the trial court's findings, and therefore recite the facts consistent with that standard. However, we present conflicting evidence to the extent necessary to clarify the issues raised on appeal." *Kidd v. Kidd*, 2014 UT App 26, ¶ 2 n.1, 321 P.3d 200 (citations and internal quotation marks omitted).

3. Husband draws our attention to an apparent typographical error in the trial court's subtraction of the amount owed on the house from the amount of its value. Because we remand for a

(continued…)

¶4      The second amended decree also ordered the division of the parties' personal property. The court identified what would be awarded to each party, noted the values Husband and Wife placed on them, and then determined the value of each item. For some items, this was simply the average between each party's valuations. Where the court deviated from this method, it explained the basis for doing so. For example, the court noted that Husband valued Wife's jewelry at $10,000, whereas Wife valued it at $700. In awarding the jewelry to Wife, the court found its value to be $1,000, explaining that Wife was more knowledgeable than Husband about the jewelry's worth. In total, the court ordered that Husband would receive personal property valued at $12,430, Wife would receive personal property valued at $7,275, and Husband owed Wife the difference between those amounts.

¶5      The court similarly valued and divided the vehicles owned by the parties. Although the court awarded some vehicles to Wife and others to Husband, it ordered the sale of a particular car. The court determined that even though Husband had inherited the car before the marriage, it was a marital asset because the car's increase in value was attributable to investments made from the marital estate, including income from the marital business and Husband's time and effort. After rejecting the parties' valuations of the car, the court ordered its appraisal and sale. The decree gave Husband the option to purchase the car at the appraised price and provided that the sale proceeds would be split evenly.

¶6      The trial court next determined that Husband would pay Wife alimony in accordance with Utah Code section 30-3-5(8). In

_____

(…continued)
recalculation of the equity in the house, we need not address this mathematical error further.

attempting to equalize the parties' standards of living as near as possible, the court considered Wife's ability to produce income. It found Wife's testimony on the subject credible, and concluded that her net monthly income was $2,613.[4] The court also considered Wife's financial condition and need, and determined that her expenses left a $769 monthly shortfall. It then evaluated Husband's ability to pay spousal support, and found that Husband had a net monthly income of $2,876.19—which exceeded his need by $643.[5] Although Husband did not have the ability to pay all of Wife's needs, the court equalized their incomes by ordering Husband to pay $706 in monthly alimony.[6] After the parties' child reaches the age of eighteen, alimony will increase to $874 per month. Husband appeals.

ISSUES ON APPEAL

¶7    Husband contends the trial court erred in calculating the value of and equity in the parties' house. Relatedly, Husband contends the court should have ordered an appraisal of its fair market value. Next, Husband contends the court exceeded its

---

4. This figure included child support.

5. The court actually stated that "[Husband's] need exceeds his income by $643," but the court found his monthly net income to be $2,876.19 and his actual monthly need to be $2,234.14, leaving him $643 in excess of his needs. That math would be consistent with the court's finding on the next page that "Husband can afford . . . $643 per month in alimony." We therefore conclude the court intended to communicate that Husband's income exceeds his needs.

6. One place in the second amended decree identified the amount of alimony as $764 per month. Both parties agree that despite this discrepancy, $706 is the amount the court awarded.

discretion in valuing and dividing various items of personal property. Finally, Husband contends the court erred in its award of alimony to Wife because it did not properly evaluate his ability to pay and failed to impute income to her.

ANALYSIS

I. The Marital House

¶8    Husband challenges the trial court's findings with regard to both the overall value of and the equity in the parties' house. We address each calculation in turn.

A.    The Value of the House

¶9    Husband first argues that the trial court erred in finding that the house was worth $285,400. He argues that the court's reliance on the 2013 tax-assessed value is misplaced because that value "appears to be based on outdated facts and information." He also asserts that the 2013 tax-assessed value is out of step with comparable market values for nearby houses.

¶10    We review the trial court's factual findings for clear error. *Olson v. Olson*, 2010 UT App 22, ¶ 9, 226 P.3d 751. "A trial court's factual determinations are clearly erroneous only if they are in conflict with the clear weight of the evidence, or if this court has a definite and firm conviction that a mistake has been made." *Kimball v. Kimball*, 2009 UT App 233, ¶ 14, 217 P.3d 733 (citation and internal quotation marks omitted). In conducting a review for clear error, we give "due regard . . . to the opportunity of the trial court to judge the credibility of the witnesses." Utah R. Civ. P. 52(a).

¶11    We conclude that Husband has not demonstrated the trial court clearly erred in valuing the house at $285,400. Although Husband testified the house was worth $425,000, the court based

its calculation on Wife's financial declaration, which stated that the current value was $269,600, and on Husband's exhibit that showed the 2013 current tax value as $285,400. The court deemed the tax value and Wife's declaration consistent with one another, finding $285,400 to be the total value of the house. On appeal, Husband attacks the quality of the evidence the court relied upon, but he has not shown it was legally insufficient to support the finding of the house's value. Because the court's valuation of the house has adequate evidentiary support, it is not clearly erroneous.

¶12    Husband also argues the trial court erred by declining to order an appraisal of the house. Because trial courts "have considerable discretion concerning property distribution in a divorce proceeding," they have discretion to decide whether to order an appraisal. *See Dahl v. Dahl*, 2015 UT 79, ¶ 119. Accordingly, we presume the court's determinations are valid, only disturbing the court's action if "a clear and prejudicial abuse of discretion is demonstrated." *Id.* (citations and internal quotation marks omitted).

¶13    Husband asserts the trial court should have ordered an appraisal of the house's value because of "the vast disparity between the estimated values argued by each party." In support, Husband cites the court's decision to order an appraisal of the car and argues it likewise should have ordered an appraisal of the house. But the court's decision to order an appraisal of the car came after it rejected the credibility of the starkly different valuations offered by the parties. In contrast, the court credited evidence submitted by both parties concerning the valuation of the house. Because of the consistency between Wife's declaration and Husband's exhibit listing the tax valuation, the court was able to value the house at $285,400. And because it could rely on credible evidence to determine the value of the house, it had no need to order an independent appraisal. Under these circumstances, Husband has not demonstrated that the court's

decision declining to order an appraisal of the house was outside the bounds of the court's discretion. Accordingly, we affirm its refusal to order an appraisal.

B.     The Equity in the House

¶14     Husband next challenges the trial court's finding as to the equity in the marital house. He contends the court "wrongly used the original cost of the mortgage instead of the then current balance owing on the mortgage to subtract from the estimated market value to determine the equity in the marital home." As with Husband's challenge to the court's valuation of the house, we review the court's calculation of the equity for clear error. *See Olson v. Olson,* 2010 UT App 22, ¶ 9, 226 P.3d 751.

¶15     To calculate equity, the trial court used the difference between the amount owed on the mortgage and the amount it found was the house's total value. The court's finding with regard to the amount owed on the mortgage was therefore a key component of its equity calculation. It determined the amount owed on the mortgage by expressly relying on Husband's testimony that "the parties currently owe $167,000." Husband points out on appeal that "the trial court misstate[d] the Husband's testimony pertaining to the remaining balance due on the mortgage." We agree.

¶16     Although the trial court expressly credited Husband's testimony as to the amount owed on the house, its order did not accurately reflect that testimony. In conformity with his financial declaration, Husband testified that the original amount of the mortgage was $167,000, and he consistently testified that the remaining amount owed was approximately $70,000. He testified that the parties paid approximately $100,000 toward the mortgage over ten years, and his financial declaration attached a bank statement showing that the principal amount remaining on the mortgage as of December 2013 was $70,389.75. Thus, the court's finding regarding Husband's testimony is contrary to the

clear weight of the evidence because Husband in fact provided evidence that the parties currently owe only $70,000.[7]

¶17    As a result of its misstatement of Husband's testimony, the court's equity calculation used the original mortgage amount of $167,000, and this led to Husband receiving a smaller dollar amount for the house's equity than the court intended. Because we conclude that the court clearly erred in its finding with regard to the amount owed on the mortgage, we set aside its order concerning the equity in the house and remand for a recalculation that accurately reflects the testimony upon which the court relied.

## II. Personal Property

¶18    Next, Husband contends the trial court exceeded its discretion in its valuation and distribution of certain items of personal property, including the car and jewelry. "[T]he overarching aim of a property [distribution] . . . is to achieve a fair, just, and equitable result between the parties." *Dahl v. Dahl*, 2015 UT 79, ¶ 131 (second alteration and omission in original) (citation and internal quotation marks omitted). "Trial courts have considerable discretion in determining . . . property distribution [and valuation] in divorce cases, and will be upheld on appeal unless a clear and prejudicial abuse of discretion is demonstrated." *See Stonehocker v. Stonehocker*, 2008 UT App 11, ¶ 8, 176 P.3d 476 (omission in original) (citation and internal quotation marks omitted). Additionally, "[i]n reviewing a

---

7. Wife argues on appeal that because Husband's testimony was "equivocal" and "not certain" about the amount owed, the trial court did not clearly err in finding that the amount owed was $167,000. We are not persuaded by her argument because the court specifically found that Husband was credible on this subject.

property distribution, we will not set aside findings of fact, whether based on oral or documentary evidence, unless they are clearly erroneous, and we give due regard to the district court's superior position from which to judge the credibility of the witnesses." *Dahl*, 2015 UT 79, ¶ 121.

A.    The Car

¶19    Husband contends that even though the car "obtained the status of marital property because of . . . the repairs and improvements done on the car during the marriage," "those repairs and improvements do not deprive [it] of its pre-marital value before the improvements were made." Thus, Husband posits, the "pre-marital value held by . . . Husband should be . . . excluded from the division of the proceeds of the sale once the car is sold." We are not persuaded.

¶20    To begin, Husband has not complied with this court's requirement that the appellant's brief contain a "citation to the record showing that the issue was preserved in the trial court" or a statement of the grounds for seeking review of this issue. *See* Utah R. App. P. 24(a)(5)(A)–(B). "An issue is preserved for appeal only if it was 'presented to the trial court in such a way that the trial court [had] an opportunity to rule on [it].'" *Wohnoutka v. Kelley*, 2014 UT App 154, ¶ 4, 330 P.3d 762 (alterations in original) (quoting *438 Main St. v. Easy Heat, Inc.*, 2004 UT 72, ¶ 51, 99 P.3d 801). Although Husband argued that the trial court should award the car to him, he has not provided a specific citation showing that he argued he is entitled to the premarital portion of the car's value even if the car is marital property. *See id.* This failure matters because issues that are not raised before the trial court "'are usually deemed waived.'" *Id.* ¶ 3 (quoting *438 Main St.*, 2004 UT 72, ¶ 51).

¶21    In any event, Husband has not carried his burden on appeal. To demonstrate error, an appellant must support his argument with reasoned analysis based on relevant legal

authority. *See Simmons Media Group, LLC v. Waykar, LLC*, 2014 UT App 145, ¶ 37, 335 P.3d 885. Where the contentions on appeal are "'asserted without the support of legal reasoning or authority,'" this court "will not assume the appellant's burden of argument and research." *Crossgrove v. Stan Checketts Props., LLC*, 2015 UT App 35, ¶ 6, 344 P.3d 1163 (quoting *Angel Inv'rs, LLC v. Garrity*, 2009 UT 40, ¶ 36, 216 P.3d 944). Here, the court ruled that because the car had been inextricably commingled with the marital estate, the proceeds of its sale would be split evenly between the parties. On appeal, Husband contends the court was required to award him the pre-marital portion of the car's value, but he does not support this proposition with legal authority, nor does he discuss any Utah case law analyzing property distribution or commingling. Consequently, he has not convinced us that the court exceeded its discretion in making the property distribution with regard to the car.

B.    Methodology in Valuing the Personal Property

¶22    Husband contends the trial court exceeded its discretion by employing different methods to calculate the value of the parties' personal property. Husband recognizes the court often determined the value of each item by "averaging the estimated values of each party," but contends it exceeded its discretion when it "chose one party's value over the other without providing any factual finding as to why it did so."[8] In support, Husband cites the court's valuation of Wife's jewelry, and argues that instead of adopting Wife's valuation of the jewelry, it should have "split[] the difference per its own methodology"

---

8. We disagree with Husband's characterization of the trial court's decision to adopt Wife's valuation of the jewelry. The court explained why it chose Wife's valuation over Husband's, reasoning that Wife was more knowledgeable than Husband about the jewelry's worth.

between his valuation of $10,000 and Wife's valuation of $700.[9] According to Husband, the court's valuations led to an unbalanced apportionment of the marital property.

¶23 Husband has not carried his burden of persuasion on appeal. In particular, he has not shown he preserved the argument that the trial court could not employ different methodologies in finding values for the personal property. *See* Utah R. App. P. 24(a)(5)(A) (requiring that the appellant's brief include "citation to the record showing that the issue was preserved in the trial court"). Husband also failed to support his argument with any legal authority or reasoned analysis. *See Smith v. Smith*, 1999 UT App 370, ¶ 8, 995 P.2d 14 ("Briefs must contain reasoned analysis based upon relevant legal authority." (citing Utah R. App. P. 24(a)(9))). Husband's challenge to the valuations of the personal property is essentially an attempt to retry the matter on appeal. "When acting as the trier of fact, the trial judge is entitled to give conflicting opinions whatever weight he or she deems appropriate." *Newmeyer v. Newmeyer*, 745 P.2d 1276, 1278 (Utah 1987). In attacking the court's weighing of the valuation evidence, Husband has not demonstrated that it clearly erred in its findings or otherwise exceeded the bounds of its discretion. Accordingly, we reject this challenge to the court's order.

## III. Alimony

¶24 Husband next challenges the trial court's alimony award to Wife. Specifically, he contends the court did not properly

---

9. Although the record suggests that some of Wife's jewelry was separate property either because it was a gift to her or was acquired before marriage, neither party questions the propriety of treating the jewelry at issue here as a marital asset; the parties contest only the value to be placed on that asset.

evaluate two factors involved in determining alimony, namely, Wife's ability to produce income and his ability to pay alimony.

¶25 Utah Code section 30-3-5(8)(a) sets forth the factors trial courts must consider in fashioning an alimony award. Utah Code Ann. § 30-3-5(8)(a) (LexisNexis 2013). Among other things, the court must consider "the recipient's earning capacity or ability to produce income" and "the ability of the payor spouse to provide support." *Id.* "Trial courts have considerable discretion in determining alimony . . . and [determinations of alimony] will be upheld on appeal unless a clear and prejudicial abuse of discretion is demonstrated." *Boyer v. Boyer*, 2011 UT App 141, ¶ 9, 259 P.3d 1063 (alteration and omission in original) (citation and internal quotation marks omitted). Moreover, "[i]f a trial court considers [the statutory] factors in setting an award of alimony, we will not disturb its award absent a showing that such a serious inequity has resulted as to manifest a clear abuse of discretion." *Connell v. Connell*, 2010 UT App 139, ¶ 9, 233 P.3d 836. Generally, a trial court acts within the bounds of its discretion so long as there is a reasonable basis for its decision. *See Riley v. Riley*, 2006 UT App 214, ¶ 15, 138 P.3d 84. "We review challenges to findings of fact for clear error . . . ." *Kidd v. Kidd*, 2014 UT App 26, ¶ 13, 321 P.3d 200 (citation and internal quotation marks omitted).

A.    Wife's Ability to Produce Income

¶26 Husband argues that the trial court did not adequately consider Wife's earning capacity. In particular, he contends the court should have imputed income to Wife. Husband asserts Wife had a greater earning capacity than the court recognized because Wife's stated income accounted for only a thirty-six hour work week and because, according to Husband, Wife was capable of working forty hours per week. He further argues that Wife historically held two jobs during the marriage and was equally capable of working more than one job after the divorce.

¶27    Generally, the court may impute income to a spouse for purposes of calculating alimony if "there is insufficient evidence of the statutory alimony factors." *Dahl v. Dahl*, 2015 UT 79, ¶ 116. A court may also "impute income to an underemployed spouse for purposes of calculating alimony," but "only if, upon examining the spouse's historical and current earnings, it determines that the spouse is voluntarily unemployed or underemployed." *Connell*, 2010 UT App 139, ¶ 16 (citation and internal quotation marks omitted).

¶28    In this case, the trial court was silent as to whether Wife was voluntarily underemployed.[10] Although Husband asserts that "once the process of litigating the divorce began, [Wife] voluntarily became underemployed by dropping down to only one job," he does not support this assertion with record evidence and has not shown that the court clearly erred in not finding voluntary underemployment. Without such a finding, imputing income was unnecessary if there was sufficient evidence of Wife's ability to produce income. *See id.; see also Dahl*, 2015 UT 79, ¶ 116. Notably, Husband does not argue there was insufficient evidence regarding this factor.

¶29    Additionally, Husband has not established that the trial court did not adequately consider Wife's ability to produce income. The court specifically found Wife's testimony on the subject to be credible, and it was aware that Wife had primary custody of the parties' child. Despite Husband's testimony that Wife worked two jobs during the marriage, Wife testified she could not obtain a second job now because of the child. *See generally Tobler v. Tobler*, 2014 UT App 239, ¶ 40, 337 P.3d 296 (explaining that Utah courts "have recognized that a recipient spouse's earning capacity may be affected by the custody of

---

10. By contrast, the court explicitly found that Husband was voluntarily underemployed.

children"); *Endrody v. Endrody*, 914 P.2d 1166, 1170, 1172 (Utah Ct. App. 1996) (indicating that a spouse's child care responsibilities may support a court's decision not to impute income to that spouse). Under these circumstances, the evidence did not compel a finding that Wife was capable of earning more than she is at her current level of employment. Husband disagrees with the court's evaluation of this alimony factor but fails to demonstrate that the decision was either unsupported or an abuse of discretion. Accordingly, we are not persuaded the court erred in not imputing income to Wife or that it did not adequately consider her ability to produce income.

B.      Husband's Ability to Pay Spousal Support

¶30    Finally, Husband argues the trial court erred in evaluating his ability to provide support by failing to account for his anticipated "$300 per month health insurance costs" and "$100 in dog care expenses." We are not persuaded the court exceeded its discretion by omitting those expenses.

¶31    With regard to health insurance expenses, Husband's financial declaration stated in the left-hand column for quantifying various monthly expenses that Husband spent $150 per month for health care, including prescriptions and doctor visits. In the right-hand column describing each category of expense, Husband added to the line for "health care insurance premiums" that he expected to spend $300 per month.[11] Nevertheless, Husband did not include this $300 when he totaled his monthly expenses. When the trial court evaluated Husband's ability to provide spousal support, it deemed "[Husband's] claimed expenses unreasonable in a number of

---

11. In comparison, Wife's financial declaration indicated that her monthly health care expenses were $40 and her monthly health insurance premiums were $156.

particulars," and either eliminated or reduced several amounts Husband claimed in the left-hand column of his financial declaration. The court did not alter the $150 noted for health care expenses. The court then totaled the expenses in the left-hand column in the same manner that Husband had totaled his expenses in the declaration. As a result, the court's total calculation of Husband's needs did not include $300 for Husband's expected health insurance premiums as listed in the right-hand column, but it did include $150 for other health care expenses as listed in the left-hand column. In other words, the court accounted for all of Husband's health care expenses in the left-hand column. In light of this, Husband has not shown that the trial court exceeded its discretion by not including $300 for health insurance.

¶32   Regarding dog care expenses, Wife originally claimed to spend $160 per month for miscellaneous expenses, including dog food and pet grooming. In evaluating her needs, the trial court noted that Wife had similarly "overstated" her expenses and ultimately reduced the $160 to $60. The court explained that because it had awarded the dog to Husband, "[Wife] will not be buying dog food or getting the dog groomed." Husband contends the court should have "add[ed] the corresponding $100 in dog care expenses to the Husband's budget." Although the court took pet expenses into account when reducing Wife's expenses, it apparently decided it was not appropriate to add $100 for pet expenses to Husband's expenses. We cannot say that this choice was a clear abuse of discretion considering the court had determined it had to equalize the parties' standard of living given its finding that "the parties cannot afford a divorce." *See Woolums v. Woolums*, 2013 UT App 232, ¶ 10, 312 P.3d 939 (indicating that the trial court's evaluation of the reasonableness of the claimed expenses in a divorce proceeding fell within its broad discretion to determine an appropriate alimony award); *see also Fish v. Fish*, 2010 UT App 292, ¶ 30, 242 P.3d 787 ("If there is not enough combined income available for both spouses to

remain at the standard of living enjoyed during the marriage, their incomes should be equalized to the extent possible."). As a result, we reject Husband's challenges to the trial court's alimony award.[12]

CONCLUSION

¶33   Husband has not demonstrated that the trial court exceeded its discretion in dividing the parties' personal property or in setting alimony. Accordingly, we affirm the court's order with regard to those issues. We also affirm its valuation of the house and its decision to decline ordering an appraisal. Nevertheless, we reverse the court's assessment of the equity in the house and remand to the trial court for the limited purpose of recalculating that figure and the corresponding distribution of assets related to the marital house.

――――――――

12. Husband also briefly argues that the trial court "failed entirely to provide any rational basis for increasing alimony after [the] dependent child is no longer supported" by Wife. It is true that the court's order provides that Husband's alimony obligation will increase to $874 per month after the parties' child turns eighteen years old. But the court provided a rational basis for its decision by explaining that at that point Husband's child support obligation would end. The court then recalculated Wife's and Husband's respective needs and net incomes, and ordered Husband to pay alimony for a period of time equal to the length of the marriage. *See Richardson v. Richardson*, 2008 UT 57, ¶ 11, 201 P.3d 942 (holding that it was within the district court's discretion to order a prospective increase in alimony when child support payments cease).